JOSEFA RÍOS VIUDA DE NOYA, demandante y apelada, *v.* THE NATIONAL CITY BANK OF NEW YORK, demandada y apelante.

Núm. 6950.—*Sometido:* Mayo 22, 1936. *Resuelto:* Mayo 5, 1937.

*Fiddler, Córdova & McConnell,* abogados de la apelante; *R. Cuevas Zequeira,* abogado de la apelada.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

La demandante, cliente correntista del banco demandado, en 31 de enero de 1934 expidió dos cheques a cargo de la sucursal de dicho banco en Santurce, que leen así:

"Núm. 3. Santurce, P. R., Enero 31, 1934.—The National City Bank of New York, Santurce Branch.—Pay to the order of Porto Rico Railway Co.—$424 100/100 Cuatro veinte y cuatro . . . . . U. S. Dollars.

(Firmado) *Josefa Ríos Vda. Noya."*

"Núm. 4. Santurce, P. R., Enero 31, 1934.—The National City Bank of New York, Santurce Branch.—Pay to the order of Porto Rico Gas & Co.—$256 100/000 Dos cincuenta y seis . . . . U. S. Dollars.

(Firmado) *Josefa Ríos Vda. Noya."*

Ambos cheques fueron depositados en el Royal Bank of Canada, en San Juan, y presentados por éste, a través del "Clearing House", al National City Bank, para su cobro. Y en 10 de febrero de 1934, el banco demandado devolvió los dos cheques al Royal Bank of Canada por la alegada razón de que la libradora "No tiene fondos suficientes."

La demandante alega que en la fecha en que sus dos cheques fueron devueltos por el banco demandado, su cuenta corriente con dicho banco arrojaba un saldo a su favor por la suma de $85.86, que era más que suficiente para atender al pago de sus dos libranzas; que el acto negligente e injustificado del banco demandado ha ocasionado a la demandante graves perjuicios en su crédito, buen nombre y reputación; y se reclama como indemnización la suma de $10,000.

El demandado negó que los cheques en cuestión hubieran sido expedidos, respectivamente, por cuatro dólares veinte y cuatro centavos ($4.24) y por dos dólares cincuenta y seis centavos ($2.56), y alegó que dichos cheques fueron expedidos en forma tal que se prestaban a la interpretación razonable de

que las sumas por las cuales se giraban eran de cuatrocientos veinte y cuatro dólares ($424) y Doscientos cincuenta y seis dólares ($256), respectivamente; que el demandado así lo entendió de buena fe, y que no teniendo la demandante fondos suficientes para cubrir dichas sumas, el banco se vió obligado a devolver los cheques por insuficiencia de fondos.

Condenado al pago de una indemnización de $2,000 más las costas, sin incluir honorarios de abogado, el demandado apeló.

El apelante señala como errores cometidos por la corte sentenciadora el de no haber resuelto que los daños sufridos por la demandante se debieron a su propia negligencia; y el de haber incurrido en manifiesto error y actuado con parcialidad, pasión y prejuicio al apreciar la evidencia.

■■ La mera lectura de los cheques revela una patente ambigüedad o discrepancia entre las palabras y los números usados por la libradora. Las palabras *cuatro veinte y cuatro U. S. Dollars,* en el lenguaje usual y corriente de Puerto Rico, no significan ni son equivalentes a $424; y las palabras *Dos cincuenta y seis U. S. Dollars* no pueden ser interpretadas como expresivas de la cantidad de $256. De acuerdo con el uso y modo de expresión corrientes en el idioma inglés, las frases ''Four twenty-four U. S. Dollars'' y ''Two fifty-six U. S. Dollars'' podrían ser interpretadas, respectivamente, como expresivas de las sumas $424 y $256, pues la supresión de la palabra ''hundred'', ciento, es muy frecuente entre los que se expresan en el idioma inglés, lo cual no sucede entre los de habla española.

En previsión de que esas discrepancias entre las palabras y los números pudieren ocurrir, el legislador ha dispuesto la regla que deberá aplicarse y a la cual debe ajustarse el pagador de un documento negociable al descubrirse tales discrepancias. El artículo 18, inciso 1, de la Ley Uniforme de Instrumentos Negociables, aprobada en 22 de abril, 1930, leyes de ese año, pág. 181, dispone:

"Artículo 18.—Cuando la redacción de un documento fuere ambigua o hubiere omisiones en el mismo, se aplicarán las siguientes reglas de interpretación:

"1. Cuando la cantidad que hubiere de pagarse se expresare en palabras y números y hubiere discrepancia entre unas y otros, la cantidad indicada en palabras será la que deberá pagarse; pero si las palabras fueren ambiguas o dudosas podrá recurrirse a los números para fijar la cantidad;"

De acuerdo con la regla que establece el precepto legal transcrito, era deber del banco demandado, al descubrir que la libradora no tenía fondos suficientes para cubrir las sumas de $424 y $256, expresadas en números, recurrir a las palabras usadas por la libradora para expresar la cantidad por la que había librado cada uno de dichos cheques. ¿Cumplió el Banco demandado esa obligación? Examinemos la prueba.

Miguel Angel Polanco, tenedor de libros y testigo del banco demandado, declaró que fué él quien recibió los dos cheques por conducto del "Clearing" del Rowal Bank of Canada; que al ver las cantidades, *fijándose en los números,* vió que los cheques decían "cuatrocientos veinticuatro dólares" y "doscientos cincuenta y seis dólares", respectivamente, y que al examinar el balance y ver que no había fondos suficientes, los devolvió por esa razón; que los cheques presentados por el "Clearing House" vienen acompañados de un volante, en el que se hacen constar los cheques y la cantidad; que él no se fijó en el volante para determinar las cantidades por las que figuraban los cheques de la demandante, porque no es necesario fijarse en el volante para endosar el cheque. Y contestando a las repreguntas del abogado de la demandante dijo:

"P. ¿Cómo dice ese cheque en letras, testigo?
"R. Dice cuatro veinte y cuatro.
"P. ¿Y cuatro veinticuatro qué quiere decir?
"R. Cuatro dólares 24 centavos.
"P. ¿Y si el cheque que tiene ahora en su manos quiere decir

cuatro dólares 24 centavos, por qué, entonces, marcó que no tenía fondos suficientes?

"R. Le dije que al fijarme en los números decía 424.

"P. ¿Por qué no se fijó en la cantidad que está escrita en letras?

"R. Bueno, fué por el mucho volumen de trabajo que hubiera ese día en el Banco, como había inspectores que tenían de Nueva York, el "clearing" vino un poco tarde; se estaba apurando para que se pagaran los cheques y al fijarme en la cantidad y en el número devolví el cheque."

Contestó en igual forma en cuanto al cheque por $2.56, y continuó declarando: que la costumbre del banco, cuando existe discrepancia entre los números y las palabras, es devolver el cheque al banco que lo ha presentado al cobro, haciendo constar en el volante "Cantidades no coinciden"; que no se hizo eso en este caso debido al volumen de trabajo; que el mismo día en que se devolvieron los cheques al Royal Bank of Canada, éste expidió avisos de débito por cada uno de los dos cheques, por $4.24 y $2.56, respectivamente. Y al ser examinado de nuevo por el abogado del banco, el testigo reafirmó su interpretación de las cantidades expresadas en letras, en el siguiente diálogo:

"P. El mismo Exhibit Núm. 1 del demandante se lo muestro otra vez. En la cantidad aquí escrita en letras, ¿usted dice que dice cuatro veinticuatro dólares?

"R. Sí, Señor.

"P. ¿Me hace el favor de decirme qué entiende usted por cuatro veinticuatro dólares?

R. Cuatro dólares, veinticuatro.

"P. ¿Usted no tendría ninguna duda en ningún cheque que se presente aquí diciendo 424 dólares sobre si eran 424 dólares?

"R. Me dice cuatrocientos.

"Abogado: Nada más, Sr. Juez."

A nuestro juicio, la evidencia establece claramente la negligencia de los empleados del demandado como causa próxima del daño causado a la demandante. Ésta expidió dos cheques para pagar sus cuentas, una por $4.24 por servicios de corriente eléctrica, y otra por $2.56 por suministro de gas flúido. Las compañías a favor de las cuales se expidie-

ron los cheques los aceptaron en pago de sus respectivas cuentas, y por esas mismas sumas los depositaron al cobro. Para el cobro de $4.24 y $2.56 el Royal Bank, por conducto del "Clearing House", presentó ambos cheques al banco librado. El empleado encargado de cercionarse de si la persona que libró los cheques tenía fondos suficientes para pagar las cantidades expresadas en números, pudo evitar el daño con sólo fijarse en las cantidades expresadas en letras, las que seguramente hubieran sido interpretadas por él en la misma forma en que lo fueron al serle exhibidos los cheques en el acto del juicio. Y si después de ese examen le hubiese quedado aún alguna duda en cuanto a la intención de la libradora, esa duda pudo haberla resuelto examinando el volante del "Clearing House", en el que constaba la cantidad exacta para cuyo pago se presentaban una y otra libranza. Y por último, si al descubrir la discrepancia, el empleado del banco no se creyó autorizado para pagar los cheques, pudo evitar el daño a la demandante requiriéndola para que aclarase la duda o devolviendo los cheques al banco que los presentó al cobro notificándole, de acuerdo con la práctica del banco demandado, que las cantidades no coincidían. Nada de eso hizo el empleado del demandado.

El hecho de que la demandante, por error, descuido o negligencia redactase los cheques en la forma en que éstos fueron presentados no exime de responsabilidad al banco librado si éste, mediante el ejercicio del cuidado y diligencia a que sus clientes tienen derecho, pudo evitar y no evitó el daño. La evidencia aducida en este caso demuestra claramente que los empleados del banco demandado actuaron negligentemente, al devolver los cheques de la demandante, por la razón de no tener ésta fondos suficientes, sin recurrir a los medios de comprobación que tenían a su alcance y que eran suficientes para explicar la obvia discrepancia entre las palabras y los números en ambos cheques.

Las relaciones entre un banco y sus clientes correntistas son de naturaleza contractual. Al aceptar un depósito en

cuenta corriente, el banco contrae la obligación de honrar, pagándolos al ser presentados al cobro, los cheques expedidos por el correntista hasta el límite del balance a su favor en los libros del banco. Y si así no lo hiciere, el banco incurre en responsabilidad. Véanse: *Third National Bank* v. *Ober,* 178 Fed. 678; *Atlanta National Bank* v. *Davis,* 96 Georgia 334, 51 A.S.R. 139; *Patterson* v. *Marine National Bank,* 130 Pa. 419, 18 Atl. 632; *Stevens* v. *Market Street Title & T. Co.,* 65 Pa. Super. Ct. 288, 4 A.L.R. 955; y *Woody* v. *National Bank,* 194 N. C. 549, 140 S. E. 150.

El incumplimiento de esa obligación se debió a la negligencia y falta de cuidado de los empleados del Banco demandado y éste debe reparar el daño causado a su cliente.

De la prueba practicada aparece que el banco demandado, al darse cuenta del error cometido por sus empleados, hizo cuanto estuvo a su alcance para mitigar en lo posible el perjuicio que pudiera sufrir la demandante, notificando al Royal Bank of Canada y a las Compañías a favor de las cuales se expidieron los cheques y explicándoles lo ocurrido.

No estamos convencidos de que el crédito y buen nombre de la demandante hayan sido seriamente afectados, y opinamos que la suma de dos mil dólares concedida por la corte inferior es excesiva.

*Por las razones expuestas se modifica la sentencia apelada en el sentido de reducir a doscientos cincuenta dólares ($250) el importe de la indemnización que el demandado deberá pagar a la demandante, y así modificada se confirma.*

El Juez Asociado Señor Wolf disintió por estimar que debe revocarse la sentencia en su totalidad y declararse sin lugar la demanda.

El Juez Asociado Señor Córdova Dávila no intervino.