Rivera, Demandante y Apelante, *v.* Martínez, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de Aguadilla en pleito sobre daños y perjuicios por libelo.

No. 1778.—Resuelto en diciembre 6, 1918.

Daños y Perjuicios—Reclamación de—Regla General.—Es una regla general bien establecida que cuando se reclaman daños y perjuicios de otra persona ocasionados por su culpa o negligencia, es necesario alegar y probar la existencia real y positiva de los perjuicios causados.

Daños y Perjuicios—Libelo—Palabras Libelosas per quod y per se.—Las palabras pueden ser libelosas *per quod* o *per se.* La distinción se basa en una regla de evidencia. Cuando se reclaman daños y perjuicios por palabras libelosas *per quod,* se aplica la regla general expuesta, pero cuando la acción se basa en palabras libelosas *per se,* entonces los daños generales no tienen que especificarse ni probarse, porque se presume que resultan concluyentemente de ellas.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. José C. Rivera y Luis Llorens Torres.*

Abogados del apelado: *Sres. Víctor P. Martínez y Leopoldo Feliú.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

José C. Rivera demandó en la Corte de Distrito de Aguadilla a Víctor P. Martínez alegando que por virtud de ciertas falsas y difamatorias publicaciones, le había perjudicado en

su reputación y buena fama, reclamando, por tal concepto, la suma de veinte mil dólares.   El demandado excepcionó la demanda, la contestó negando aquellos hechos que le perjudicaban, alegó "materia nueva de oposición a la demanda" y reconvino al demandante para que le pagara treinta mil pesos por persecución maliciosa.   Las excepciones fueron desestimadas y celebrada la vista la corte dictó sentencia declarando con lugar la demanda y sin lugar la reconvención y condenando al demandado a pagar al demandante la suma de un peso, honorarios de abogado en la suma de un peso y las costas del litigio.   La apelación que estamos considerando se interpuso por el demandante limitándola en su alegato a la cuantía de los daños y perjuicios.

El demandante alegó en su demanda que era juez de la Corte Municipal de San Sebastián; que el demandado sabiendo que el demandante desempeñaba dicho cargo y maliciosamente tratando de perjudicarle y de privarle de la confianza y buena reputación de que gozaba entre los vecinos de dicho pueblo y en toda la comunidad de Puerto Rico, compuso y publicó una carta dirigida allá por el 28 de enero de 1916 a don Luis Muñoz Rivera, en Washington, Estados Unidos, conteniendo las siguientes palabras que se referían al demandante:

"Pliego de cargos contra José C. Rivera, Juez Municipal de San Sebastián, nombrado a instancia y recomendación de su pariente Hon. Luis Llorens, redactor del 'Juan Bobo' en San Juan, P. R.

"1º. Es incapaz para el cargo por no estar práctico en la legislación de Puerto Rico y no tener los dos años de residencia que exige la ley.   Eso se prueba con las sentencias en que ha intervenido obrantes en la secretaría de aquella corte.

"2º. Por conducta inmoral, pues solamente se dedica a beber en demasía, corre en automóvil a cabeza descubierta y vende sus sentencias por convidadas de bebidas y deferencias particulares.

"3º. Por conducta prostituída con mujeres de mal vivir, yendo a los bailes de ellas en los barrios de 'Pepinito' y 'Guayabal.'

"4º. Por borracheras con escándolo público tomadas en casinos y calles al extremo que en una de ellas perdió un diente artificial.

"5º. Por crapuloso y desenfrenado, pues hace unos días en una comilona con borrachera que tuvieron con Cecilio A. Echeandía (a) Chilín, Cardé, Méndez y otros idem establecieron que conforme iban comiendo romperían el plato y habiendo comido Chilín lo rompió en la fuente de arroz con pollo por lo que el José C. Rivera se levantó y dijo que no permitía eso pues él era el juez, a lo que respondió Chilín: 'Aquí no hay juez; aquí lo que hay son borrachos indecentes y Ud. es el primero.'

"6º. Por alterador de la paz pues en un baile en casa de Tito Nieves el José C. Rivera se emborrachó y alteró la paz y el amo de la casa, Tito, lo puso en la calle, para vengarse el José C. Rivera mandó la policía para que suspendieran el baile y la policía no lo suspendió porque se convenció que el único que había alterado la paz era José C. Rivera.

"7º. Porque permitió en casinos y plazas toda clase de juegos prohibidos en cambio de que no le cobraran las bebidas, teniendo la policía que vestirse de paisanos para no sorprender las jugadas.

"8º. Por violador de menores de edad, pues le compró là hija a Pedro José y se la violó.

"9º. Por encubridor de delitos, pues el 22 de noviembre del año pasado, con otros sujetos fué a casa de un tal Rottari en el barrio de 'Piedras Blancas,' en la cual hubo toda clase de bebidas, comidas y juegos prohibidos * * * y a poco resultó que se incendió la casa que estaba asegurada por $1,000 cuya póliza se cobró sin dificultad de ninguna clase como puede verse en el periódico el 'Regional' número 132, de noviembre 22 de 1915.

"10º. En casa de Martín Santoni, barrio de 'Hoya Mala,' cacique del barrio, se efectuó otra comilona con juegos prohibidos sancionados por el dicho José C. Rivera, según puede verse en aquel 'Regional.'

"11º. En casa de Herminio Méndez, barrio de 'Pozas,' se dió otra comilona con juegos prohibidos sancionados por aquél.

"12º. En el barrio de 'Perchas' se dió otra comilona, en casa de Paco Roig, donde también hubieron juegos prohibidos con la sanción de aquél.

"Tal es el pliego de cargos contra el Juez Municipal de San Sebastián, José C. Rivera, que sometemos a la ilustrada consideración de V. H., a fin de que se digne ordenar una investigación y en definitiva ordenar la destitución del referido juez para bien de la justicia y del Pueblo de Puerto Rico.''

Y alegó además el demandante que el demandado compuso y público allá por el 21 de febrero de 1916 una carta dirigida a don Miguel de Jesús, *Postmaster,* San Sebastián, P. R., contentiva de unos versos que se refieren a algunos de los hechos imputados al demandante en la carta al Sr. Muñoz Rivera. Los versos se transcriben íntegros en la demanda.

El demandante afirmó que las frases contenidas en ambas cartas eran falsas y difamatorias.

En el acto de la vista el demandado no trató de probar en modo alguno la verdad de las imputaciones. Se limitó a sostener que no era autor de las cartas. Examinando la prueba la corte sentenciadora dijo:

"La corte, después de haber estudiado detenidamente la evidencia introducida y después de haber hecho un estudio cuidadoso de la ley y jurisprudencia aplicable a las cuestiones envueltas en este litigio, ha llegado a las conclusiones que fuera de toda duda razonable, el demandado es el autor de los dos anónimos copiados en la demanda o que a sabiendas los lanzó maliciosamente a los vientos de la publicidad con el fin de difamar al demandante, José C. Rivera, Juez Municipal de San Sebastián; que los dichos anónimos no son comunicaciones privilegiadas y que son libelosas *per se,* secciones 2, 4, 5 y 8 de la Ley de Libelo y Calumnia, aprobada el 19 de febrero de 1902."

No obstante haber llegado a las anteriores conclusiones, la corte estimando que el demandante no había aportado evidencia alguna de los elementos esenciales que agravan los daños inferidos, tales como desprestigio del crédito profesional, pérdida de empleo, propiedad, etc., se limitó a condenar al demandado, como ya hemos dicho, a pagar al demandante la suma de un peso por toda indemnización.

El demandante y apelante alega que la corte de distrito erró: 1°., al sostener que un libelo *per se* sólo ocasiona daños nominales, y 2°., al decidir que el demandante no probó daños especiales.

1. Examinemos el primer error. El derecho que una persona tiene a reclamar una compensación pecuniaria por los

daños y perjuicios que de una manera culpable o negligente le ha inferido otra persona, ha sido siempre reconocido. "Emendar et pechar debe el daño aquel que lo fizo al que lo recibió: et esto le puede seer demandado, quier que lo hobiese fecho por sus manos, o aviniese por su culpa, o fuese fecho por su mandado ó por su consejo, * * *," dijo en su expresivo lenguaje el Rey Sabio en la ley 3, título 15 de la Partida 7ª., y el legislador portorriqueño, siguiendo al legislador español, dispuso en el artículo 1803 del Código Civil revisado que "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." Para un estudio más amplio de esta materia, véase el caso de _Díaz v. San Juan L. & T. C.,_ 17 D. P. R. 69, páginas 73 a 82.

Y es también una regla universalmente reconocida tanto en la jurisprudencia española como en la americana que si bien existe el derecho a reclamar en tal caso, para que la reclamación pueda ser declarada con lugar por una corte de justicia es necesario que se alegue y que se pruebe la existencia real de los perjuicios causados.

Ahora bien, la acción ejercitada por el demandante en este pleito se basa en una ley especial de la Asamblea Legislativa de Puerto Rico de origen americano, o sea la "Ley para autorizar pleitos civiles por daños y perjuicios ocasionados por libelo y calumnia," aprobada el 19 de febrero de 1902, (Comp. 1911, p. 348), y la jurisprudencia americana ha reconocido que existe una excepción no en cuanto a lo fundamental, sino en cuanto a la cuestión de prueba, en casos de esta naturaleza.

En la obra de Jaggard sobre "Torts," volumen primero, página 486, se dice:

"El Sr. Townshed ha demostrado que la historia guarda silencio sobre el origen de la acción difamatoria. De conformidad con esto, utiliza la hipótesis como medio para investigar la forma en que la ley protege la reputación, y llega a la conclusión de que la pérdida pecuniaria es la base de la acción. Considera la regla legal de que determinado lenguaje constituye _per se_ y sin otra evidencia prueba concluyente de una pérdida pecuniaria sólo como una regla de evi-

dencia, quedando intacto el principio al efecto de que debe probarse una pérdida pecuniaria para que pueda haber derecho a un remedio.

"Aplicar esta distinción entre una regla de evidencia y una regla de derecho a toda la ley de daños, sería, sin embargo, revolucionario. No hay razón para añadir aún más excepciones a la ley general. Esa distinción también ignora la importante cuestión de que cuando la ley presume los daños causados por la invasión de un derecho (ya se le llame natural, simple, absoluto o de otro modo), no se permite investigar la naturaleza del daño realmente sufrido. Además, no se exige que tal daño verdadero sea suficiente en cantidad, temporal en carácter, o inmediato en orden de sucesión, en cuanto se refiere al mero derecho a recobrar (no a la cantidad). Esa distinción, por tanto, parecería ser falsa o engañosa. El hecho es que en este punto la ley es eminentemente artificial. Ha determinado para la calumnia cierta clase de palabras y para el libelo otra clase distinta, las cuales son *per se* causa de acción; esto es, invaden un derecho simple (o absoluto) de reputación. Habiendo prueba de la publicación de las palabras, o en ausencia de toda defensa, el demandante debe recobrar por lo menos daños nominales. La ley ha determinado, además, que cuando las palabras no están comprendidas en estas clases (calumniosas o libelosas *per se*) entonces sólo son causa de acción mediante prueba de haber sufrido el demandante un daño especial. El demandante no puede recobrar mediante prueba de la publicación de palabras que no sean difamatorias *per se,* aun en ausencia de toda defensa, a menos que demuestre que ha sufrido un daño que llena las condiciones fijadas por las reglas generales."

Aun cuando se trataba de un caso distinto ya que se dió a la comunicación libelosa el carácter de privilegiada de acuerdo con la misma ley, puede verse que esta corte desde hace tiempo, en el caso de *Quiñones* v. *J. T. Silva Banking and Commercial Co.,* 16 D. P. R. 696, 702, reconoció que "cuando el escrito es difamatorio *per se* y no hay privilegio a favor del demandado, con esto le basta al demandante para tener derecho a recibir a lo menos daños nominales, sin que tenga que probarlos especialmente."

Nos parece oportuno citar además la jurisprudencia de Louisiana, ya que en dicho Estado, basándose en una ley fundamental igual a la antigua ley nuestra, se va al parecer aún

más lejos. Véase lo que dice el mismo profesor Jaggard en su dicha obra, tomo 1, pág. 487:

"Louisiana, libertada de muchas de las trabas del derecho común, y derivando su inspiración en gran parte del derecho civil, tiene un buen ejemplo de la regla natural sobre la difamación de personas. Su código (art. 2315 del Código Civil, 1889), dispone que 'cualquier acto de un hombre que causa daño a otro obliga a aquél por cuya culpa sucedió, a repararlo.' 'Las cortes de ese Estado' dijo el Juez Fenner en el caso de *Spotorno* v. *Fourichon,* 40 La. Ann. 423, 4 South 71, 'no están restringidas por las distinciones técnicas que hace el derecho común de palabras accionables y no accionables *per se,* concediendo cuando se trata de estas últimas sólo daños pecuniarios especialmente probados.' Si las imputaciones son falsas, injuriosas y hechas maliciosamente o *mala animo,* contienen todos los elementos esenciales en que descansa la acción. Tanto el daño y el perjuicio como la malicia pueden inferirse de la naturaleza y falsedad de las palabras, y de las circunstancias en que fueron pronunciadas, sin necesidad de prueba especial." * * *

Y por último, como un resumen claro de la ley sobre la materia, transcribiremos lo que aparece en el tomo 17, página 264, de Ruling Case Law:

"Las imputaciones son injuriosas *per se* o *per quod.* Las palabras pueden ser libelosas *per se,* o pueden dar lugar a una acción si se alega y se prueba un daño especial; esto es, si son libelosas *per quod.* La distinción se basa en una regla de evidencia. Las palabras de ambas clases dan lugar a la acción respectiva por los mismos motivos y por las mismas razones. La cualidad nociva en las dos clases de palabras estriba en el hecho de que ellas son las causas naturales y próximas del daño pecuniario a las personas respecto de las cuales han sido publicadas maliciosamente. La diferencia entre unas y otras está en la materia de prueba de la injuria resultante. En los casos basados en palabras *injuriosas per se* su carácter injurioso es un hecho de notoriedad común, establecido por el consentimiento general de los hombres, y la corte por consiguiente toma conocimiento judicial del mismo. Ellas implican necesariamente daños, y por tanto, en tales casos los daños generales no tienen que alegarse ni probarse porque se presumen resultar concluyentemente, y un daño especial no tiene que demostrarse para sostener la acción."

Si nos detenemos un momento tan sólo en el examen de

los hechos de este caso concreto, encontraremos en verdad justificada la "regla de evidencia" admitida por las cortes americanas. Son tan tremendamente injuriosas las imputaciones hechas por el demandado al demandante, que sería desconocer la naturaleza humana si se concluyera que con su publicación no se ocasionaron perjuicios.

No está bien clara la teoría de la corte inferior. Parece que ella aceptó la jurisprudencia y se limitó a fijar como indemnización la cantidad nominal de un peso. Pero este caso requería algo más.

El libelo fué repetido, revelando este hecho la actitud persistente del demandado. Si el demandado hubiese probado en el acto de la vista siquiera alguno de los cargos, surgiría tal vez ante la conciencia judicial la figura de un ciudadano que se indignó ante el proceder incorrecto o criminal de un funcionario y fué más lejos de lo que debiera en su indignación. Pero aquí no surge esa figura, sino la de un demandado que después de lanzar contra el demandante las más tremendas imputaciones en cartas anónimas y cuando se le presenta una amplia oportunidad de probarlas, si es que eran ciertas, se limita a sostener que no fué él quien las hizo. Una actitud semejante debe producir como lógica consecuencia una responsabilidad mayor que la impuesta al demandado por la sentencia recurrida.

2. Pero hay más, analizando el segundo error, es necesario concluir que hubo prueba de actos de los cuales se desprende que la reputación del demandante se puso en tela de juicio y sufrió por virtud de la acción del demandado. Declarando bajo juramento el testigo Andrés Méndez Liciaga, páginas 37 y 38 de la transcripción, se expresó así:

"Que de estos *exhibits* se enteraron, leyéndolos otros socios del casino, quienes estaban presentes y que allí se habló de esos *exhibits* largo rato, tratándose de los cargos hechos contra el juez Rivera y haciéndose, desde luego, los correspondientes comentarios contra el juez José C. Rivera, al extremo que el declarante tuvo que intervenir y defender la conducta observada por el juez José C. Rivera; que

allí también se habló y comentó de igual modo con respecto a los versos del *exhibit* No. 9, y que con motivo de esos versos y cargos se tomó allí una actitud contra el juez, consistente en no aceptar el Comité Unionista en pleno la solicitud que había hecho de la plaza de Juez Municipal de San Sebastián el Ledo. José C. Rivera, hasta tanto no se ventilasen los cargos contra él contenidos en los *exhibits* de referencia; que el declarante podía declarar sobre el extremo procedente porque es un político entusiasta y se le atiende y considera debidamente dentro de su partido en la localidad allí; y que recuerda que eso fué en mayo de 1916, cuando las convenciones unionistas.''

Por virtud de todo lo expuesto opinamos que debe declararse con lugar el recurso establecido por el demandante y en su consecuencia debe modificarse la sentencia apelada en el sentido de que el demandado sea condenado por ella a pagar al demandante la suma de tres mil pesos, los honorarios de abogado y las costas del litigio.

> *Declarado con lugar el recurso del demandante*
> *y modificada la sentencia apelada en el sen-*
> *tido de que el demandado sea condenado por*
> *ella a pagar al demandante la suma de tres*
> *mil pesos, los honorarios de abogado y las*
> *costas del litigio.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.