Protasio Maymí Martínez, demandante y apelado, *v.* Banco Popular de Puerto Rico, demandado y apelante.

Núm. 8719.—*Sometido:* Febrero 3, 1944. *Resuelto:* Mayo 2, 1944.

*Damián Monserrat, Jr., Gabriel de la Haba y Rafael Baragaño, Jr.,* abogados del apelante; *Hipólito Marcano,* abogado del apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

La corte inferior declaró con lugar una demanda de daños y perjuicios y condenó al banco demandado a pagar al demandante la suma de $200 y las costas. Los hechos son los siguientes:

Protasio Maymí Martínez expidió un cheque el día 12 de febrero de 1942 a favor del Colmado Colón por la suma de $1.10 y contra su cuenta corriente en el banco demandado. Dicho cheque fué endosado por Esther Ortiz, esposa del demandante, y por Antonio Colón, dueño del Colmado Colón, siendo entregado a la firma Narciso Ortega, S. en C., quien lo depositó en su cuenta corriente en el banco demandado. No obstante tener el demandante fondos suficientes para cubrir el importe del cheque, el banco demandado se negó a pagarlo y lo devolvió a Narciso Ortega, S. en C. con un aviso de débito en el cual se les notificó que el cheque girado por *Francisco González Bouillerce* a favor del Colmado Colón con cargo al demandado se devolvía por la razón siguiente:

*"No Tiene Fondos Suficientes"*, aviso que aparece aprobado con las iniciales de dos empleados del demandado. La firma Ortega entonces devolvió el cheque a Colón y éste a su vez al demandante.

Además de los anteriores hechos se probó en la corte inferior que el demandante es Contable de profesión, graduado de la Universidad de Puerto Rico; que ha ocupado varios puestos públicos en el Gobierno Insular y desde julio de 1942 ocupa el cargo de Investigador de Cuentas en el Fondo del Seguro del Estado. Que fué nombrado para ocupar este último cargo después de haber ocurrido el incidente sobre el cheque.

En su opinión la corte inferior hizo constar expresamente que:

"La evidencia no nos ha demostrado que la integridad, crédito y reputación, o buen nombre del demandante se hayan perjudicado o afectado por la devolución del cheque en cuestión por el Banco demandado. Sí resulta de la prueba practicada, que los empleados de dicho Banco actuaron negligentemente al devolver el cheque del demandante por no tener fondos suficientes."

Esto no obstante declaró con lugar la demanda porque "El Banco demandado estaba en la obligación de pagar el cheque del demandante, y al no hacerlo así ha incurrido en responsabilidad. *Ríos* v. *National City Bank,* 51 D.P.R. 488", y condenó al demandado a pagar al demandante la suma de $200 y las costas.

El apelante trata de demostrar en su alegato que la corte inferior erró "al interpretar erróneamente las alegaciones contenidas en la contestación . . ." y "al desestimar la excepción previa de falta de hechos constitutivos de causa de acción", porque si bien el demandado admitió el endoso del cheque nunca admitió que estuviera *"debidamente endosado"* y que éste fué el verdadero motivo de no haberse pagado. Empero, el hecho probado es que el cheque fué devuelto, no porque estuviera indebidamente endosado sino porque el gi-

rador no tenía fondos suficientes. Esa es la base para esta acción de daños y perjuicios. Es la imputación falsa de falta de crédito que se le hace a un depositante solvente. Si el demandado hubiera devuelto el cheque por endoso indebido no hubiera surgido la causa de acción alegada en este caso. Habiendo el demandado expuesto la razón por la cual devolvió el cheque no puede luego defenderse alegando otra distinta. Véase el caso de *Macrum* v. *Security Trust & Savings Co.*, 221 Ala. 419, 129 So. 74 en el cual se resolvió que un banco que rehusa pagar un cheque porque una firma comercial no tiene fondos suficientes, no puede luego poner en tela de juicio la facultad del gerente del depositante para expedir cheques, diciendo la corte: "Si los funcionarios del banco tenían duda de la autoridad del demandante para expedir el cheque al rehusar pagar debió haberse fundado en ese motivo . . . y no en la alegación de que no había fondos suficientes; y en ese caso surgiría una cuestión distinta."

En el hecho séptimo de la demanda se alega que el cheque fué endosado por el dueño del Colmado Colón, Sr. Antonio Colón y esta alegación fué admitida en la contestación. Es cierto que el demandado negó en la contestación que el cheque le fuera devuelto al demandante por no tener fondos suficientes y alegó en contrario que se negó a pagar el cheque "por la única razón de faltarle el primer endoso y así se lo comunicó a los Sres. Narciso Ortega, S. en C. adhiriéndole al mismo un volante impreso que así lo expresaba." Empero estas alegaciones del demandado quedaron huérfanas de toda prueba. Si el demandado hubiera probado esos hechos hubiera destruído la contención del demandante y seguramente otra hubiera sido la decisión de la corte. El caso de *Eichner* v. *Bowery Bank of New York*, 48 N.Y.C. 978, entre otros, citado por el apelante, no es aplicable pues la corte expresamente dice en su opinión que "No hay alegación alguna en la demanda de que el cheque fuera endosado en algún mo-

mento por el girado bien antes o al momento cuando fué presentado al banco para ser pagado."

La verdadera cuestión importante a resolverse en este recurso es si a pesar de no haberse probado, como resolvió la corte inferior por la apreciación que hizo de la prueba, que "la integridad, crédito, reputación o buen nombre del demandante se hayan perjudicado o afectado por la devolución del cheque en cuestión por el banco demandado", pudo condenarse al demandado a pagar una indemnización al demandante. La única jurisprudencia nuestra que cita la corte sentenciadora para sostener su sentencia es el caso de *Ríos* v. *National City Bank,* supra.

En dicho caso el banco demandado, por negligencia de sus empleados, también devolvió sin pagar dos cheques de la demandante por el falso motivo de no tener fondos suficientes y se resolvió que "Las relaciones entre un banco y sus clientes correntistas son de naturaleza contractual" y que "Al aceptar un depósito en cuenta corriente el banco contrae la obligación de honrar, pagándolos al ser presentados al cobro, los cheques expedidos por el. correntista hasta el límite del balance a su favor en los libros del banco. Y si así no lo hiciere, el banco incurre en responsabilidad." Para sostener esta conclusión se citaron los casos siguientes: *"Third National Bank* v. *Ober,* 178 Fed. 678; *Atlanta National Bank* v. *Davis,* 96 Georgia 334, 51 A.S.R. 139; *Patterson* v. *Marine National Bank,* 130 Pa. 419, 18 Atl. 632; *Stevens* v. *Market Street Title & T. Co.,* 65 Pa. Super. Ct. 288, 4 A.L.R. 955; y *Woody* v. *National Bank,* 194 N.C. 549, 140 S.E. 150."

Termina la opinión diciendo:

"El incumplimiento de esa obligación se debió a la negligencia y y falta de cuidado de los empleados del Banco demandado y *éste debe reparar el daño causado a su cliente.*

"De la prueba practicada aparece que el banco demandado, al darse cuenta del error cometido por sus empleados, hizo cuanto estuvo a su alcance para mitigar en lo posible el perjuicio que pudiera

sufrir la demandante, notificando al Royal Bank of Canada y a las Compañías a favor de las cuales se expidieron los cheques y explicándoles lo ocurrido.

"No estamos convencidos de que el crédito y buen nombre de la demandante hayan sido seriamente afectados, y opinamos que la suma de dos mil dólares concedida por la corte inferior es excesiva." (Bastardillas nuestras.)

Y por ese motivo se redujo la indemnización a $250.

Hemos examinado el expediente del caso de *Ríos* y estamos convencidos que la conclusión a que allí se llegó en cuanto a la cuantía de los daños y perjuicios se basó en que la demandante *probó* que su crédito y buen nombre habían sido afectados aunque no tan seriamente para justificar la suma concedida por la corte sentenciadora. Decimos esto, porque un examen de la jurisprudencia citada en dicho caso podría inducir a la conclusión de que expresamente habíamos resuelto la cuestión planteada en el de autos, es decir, que aun a falta de prueba de daños sufridos por el demandante debe siempre condenarse al banco demandado a base de la doctrina prevaleciente en distintos estados de la Unión al efecto de que en un caso de esta naturaleza surge una presunción de que el demandante ha sufrido algunos daños y perjuicios. Nos parece más bien que la jurisprudencia citada en el caso de *Ríos* lo fué para sostener las relaciones contractuales existentes entre las partes. Veamos ahora cuál es el alcance de dicha jurisprudencia.

En algunas jurisdicciones americanas la doctrina vigente es que si el depositante es un comerciante (*trader*) se presumen los daños ya que el rechazo indebido de su cheque tiene necesariamente que afectar su crédito. En otras jurisdicciones se sostiene que si el depositante no es un comerciante los daños no se presumen y el demandante debe siempre probarlos, mientras que en otras jurisdicciones han eliminado la distinción entre comerciantes y no comerciantes sosteniéndose que en la vida moderna ambos se desenvuelven económicamente a base de crédito y que los daños deben presumirse en

todos los casos. Indudablemente fué esta última doctrina la aplicada por la corte inferior pues se limitó a citar en su opinión la monografía contenida en 126 A.L.R. 206 y a 7 Am. Jur. 392 *et seq.* que tratan en forma detallada distintos aspectos de esta cuestión. Un ejemplo del razonamiento usado para sostener la responsabilidad de un banco, aun a falta de prueba de daños, cuando el demandante no es un comerciante, lo encontramos en el caso de *Valley National Bank* v. *Witter,* 121 P. (2d) 414, 418, en el cual la Corte Suprema de Arizona se expresó así:

"De un examen general de los casos que distinguen entre el comerciante y el no comerciante, y su razonamiento, es obvio que la regla se basó en la teoría, bastante cierta cuando se aplicó por primera vez, de que el perjuicio era causado a la oportunidad del depositante para obtener más crédito financiero en sus negociaciones con otros; que prácticamente todo el negocio de un comerciante o negociante estaba basado en transacciones a crédito más bien que de contado, y que cualquier ataque a su carácter financiero necesariamente tendía a disminuir sus medios de obtener crédito en el futuro y por tanto lesionaba su negocio. Por otro lado, el no comerciante raras veces tenía cuenta en el banco, llevaba a cabo la mayor parte de sus transacciones de contado y solamente necesitaba crédito en ocasiones aisladas y especiales, de manera que no había razón para presumir que la falta de pago de uno de sus cheques, en las pocas ocasiones en que él tuvo una cuenta en el banco, podría afectar un crédito que presuntivamente no se usaba o no existía. *La situación, sin embargo, ha cambiado grandemente en los últimos años. La inmensa mayoría de las transacciones financieras modernas, bien llevadas a cabo por comerciantes o no comerciantes, son hechas a base de crédito.* Un gran porcentaje de nuestra población conduce hasta sus cuentas caseras a base de crédito mensual, pagando generalmente con cheques contra sus propias cuentas de banco, y el no pago de uno de esos cheques presuntivamente tiene que afectar su crédito, aun cuando no fuera tan grande en dólares y centavos y tan serio en proporción con la extensión de sus transacciones con aquellos que sepan del rechazo, como lo sería la negativa de pago de un cheque de un gran comerciante. En ambos casos, bajo las condiciones modernas de negocios creemos que por el mero hecho del no pago del cheque la presunción es que el crédito del depositante fué perjudicialmente afectado." (Bastardillas nuestras.)

Como hemos dicho, la jurisprudencia en los Estados Unidos está en tal forma dividida que no puede afirmarse cuál de las distintas doctrinas expuestas prevalece. Algunos estados, dándose cuenta seguramente de las consecuencias económicas que para un banco pueden tener acciones de esta clase, han aprobado estatutos limitando su responsabilidad a solamente daños nominales, a falta de prueba de daños específicos del demandante, a aquellos casos en que se alega y prueba que la actuación ha sido maliciosa. Estatutos de esta índole existen en Alabama (*First National Bank of Mobile* v. *Ducros*, 168 So. 704); Arkansas (*State Bank* v. *Marshall*, 260 S.W. 431); California (*Allen* v. *Bank of America*, etc., 136 P. (2d) 345); Missouri (*Waggoner* v. *Bank of Bernie*, 281 S.W. 130); North Carolina (*Thomas* v. *American Trust Co.*, 182 S.E. 136; *Woody* v. *National Bank of Rocky Mount*, 140 S.E. 150).

Para una discusión amplia sobre las distintas teorías existentes en los Estados Unidos, véase Michie, *Banks and Banking*, Cap. 9, Sec. 242 *et seq.* y las monografías en 4 A.L.R. 947 y 126 A.L.R. 206.

¿Debemos adoptar en Puerto Rico alguna de estas doctrinas? La regla general es que en acciones de daños y perjuicios el demandado sólo es responsable de aquéllos realmente causados y que, por tanto, el demandante en todo caso está obligado a probarlos en consonancia con los artículos 1054 y 1802 del Código Civil que proveen lo siguiente:

"Artículo 1054.—Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas."

"Artículo 1802.—El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."

Empero, como una excepción a la regla general sobre prueba de daños y perjuicios, esta Corte desde el año 1910

resolvió en un caso de daños y perjuicios por libelo, *Quiñones v. J. T. Silva Banking & Commercial Co.*, 16 D.P.R. 696, 702 que "Cuando el escrito es difamatorio *per se*, y no hay privilegio a favor del demandado, con esto le basta al demandante para tener derecho a recobrar a lo menos daños nominales, *sin que tenga que probarlos especialmente*. (Bastardillas nuestras). Ratificamos la doctrina con extensas citas de autoridades en *Rivera v. Martínez*, 26 D.P.R. 760, y en otros casos posteriores, siendo el más reciente el de *Méndez v. Kraidman*, pág. 281 ante. La misma doctrina ha sido aprobada por el Tribunal Supremo de Filipinas en *Guevara v. Almario*, 56 Jur. Fil. 518.

Morse en su obra sobre *Banks and Banking*, 6th Ed., pág. 1007, párr. 458, citado con aprobación en el caso de *Valley National Bank v. Witter*, supra, sostiene que acciones como las del caso de autos se asemejan a las de libelo y calumnia cuando dice:

" . . . Difícilmente puede rehusarse el pago del cheque de un cliente sin poner en tela de juicio su crédito, lo que de hecho será un perjuicio real, *aun cuando no pueda por la naturaleza del caso suministrar prueba independiente y clara sobre el mismo. Es como en los casos de libelo y de calumnia, con cuya clase de pleitos, ciertamente, tiene un parecido íntimo, ya que es de hecho un estigma al crédito y reputación del demandante en el mundo de los negocios.* Daños especiales pueden probarse si el demandante está en condiciones de hacerlo; pero, si no lo está, el jurado puede no obstante conceder aquellos daños temporales (*temporary*) que ellos crean es una razonable compensación por el agravio indefinido que tal acto se asuma ha infligido, de acuerdo con el curso ordinario de los eventos humanos. . . . ." (Bastardillas nuestras.)

No sólo los tratadistas sino que la jurisprudencia también sostiene que estas acciones son por su naturaleza similares a las de libelo y calumnia. Así en el caso de *Macrum v. Security Trust & Savings Co.*, supra, se dijo que "Las autoridades en términos generales sostienen que el rechazo indebido de honrar un cheque es una forma muy efectiva de

calumniar al depositante en sus negocios, y que acciones de esta clase son similares a y caen dentro de la categoría de, acciones calumniosas (extensas citas)''.

"La distinción se dice algunas veces que consiste en que en una calumnia, propiamente considerada, se usan palabras, mientras que en esta clase de daños es en efecto difamación por medio de actuaciones. *James Co.* v. *Con. National Bank,* 105 Tenn. 1, 58 S.W. 261, 51 L.R.A. (N. S.) 255, 80 Am. St. Rep. 857.

"La actuación del banquero al rehusar honrar un cheque se sostiene que constituye imputar insolvencia o mala fe por parte del girador y tiene el efecto de calumniar al comerciante en su negocio (citas).''

Igual doctrina se ha sostenido en casos en que el girador no era un comerciante. Así en el de *Spearing* v. *Whitney Central National Bank,* 56 So. 548, la Corte Suprema de Louisiana aplicando el artículo 2315 de su Código Civil, similar al 1802 del nuestro, dijo lo siguiente:

"Todas las autoridades de la ley común están de acuerdo en que daños *nominales* pueden recobrarse en *todo* caso de rechazo de un cheque de un depositante que tiene suficientes fondos en el banco.

"En el caso cumbre de *Rolin* v. *Steward,* 14 C.B. 595 una acción de daños y perjuicios por indebido rechazo de un cheque se asemejó a 'una acción por calumnia a una persona por la forma en que conduce sus negocios'. (Se cita el caso de James Co., supra, para señalar la analogía entre las dos acciones). Tal rechazo indebido es tan eficaz al imputar falta de honradez o de solvencia *al cliente* como si cualquiera de ellas se le hubiera imputado de palabra (*by word of mouth*). En el caso de autos la acción se funda en una cuasicalumnia, sin intención dañina, y se gobierna por la regla de que:

" 'Cualquier acto de un hombre que causa daño a otro obliga a aquél por cuya culpa sucedió, a repararlo. C. C. 2315.' '' (Bastardillas y paréntesis nuestros.)

No obstante sostener la similitud entre las dos clases de acciones, la Corte Suprema de Louisiana, que en casos de libelo y calumnia *per se* acepta la excepción a la regla sobre prueba de daños (véanse las citas en el caso de *Rivera* v. *Martínez,* supra), la rechaza en el caso que acabamos de citar

y sostiene que el demandante, no siendo comerciante, sólo puede recobrar aquellos daños que alegue y pruebe. Realmente no vemos la razón lógica para sostener la diferencia entre comerciantes y no comerciantes. Es cierto que en el caso de un comerciante el efecto sobre su crédito como tal puede ser más serio que el que pueda sufrir un particular, pero en cuanto a la humillación y descrédito general el efecto tanto en uno como en otro nos parece igual. No debemos pasar por alto el hecho de que en Puerto Rico constituye delito expedir, con el propósito de defraudar, un cheque sin tener fondos suficientes para su pago. Ley núm. 26 de abril 26 de 1934 (pág. 279). Aun cuando el demandante no haya podido probar daños específicos causados creemos que la corte pudo conceder la indemnización razonable que concedió. El mero hecho de que su cheque fuera deshonrado y devuelto, sin justificación alguna, a la firma N. Ortega, S. en C. y por ésta al Colmado Colón, con un aviso escrito diciendo que no tenía fondos suficientes, puso en entredicho la buena reputación del demandante entre aquellas personas que intervinieron en el asunto. Como se dijo en el caso de *Woody* v. *National Bank,* supra, en el que el demandante no era un comerciante:

"La mejor autoridad parece ser que, algo más que daños nominales deben concederse. Es casi imposible que el cheque de un cliente pueda ser rechazado indebidamente sin que se ponga en tela de juicio en alguna forma su crédito, lo cual de hecho causa algún daño efectivo, aunque no pueda, por la naturaleza del caso, presentar prueba independiente y positiva del mismo. Es como en los casos de libelo y calumnia, a cuya clase de acciones en verdad se asemejan mucho, debido a que es de hecho un estigma al crédito y buena reputación del demandante en el campo de los negocios. Daños especiales pueden demostrarse si el demandante puede hacerlo, pero si no está en condiciones de hacerlo, el jurado puede, no obstante, conceder aquellos daños moderados (*temperate*) que considere una razonable compensación por el perjuicio indefinido que un acto de esta naturaleza debe asumirse que ha causado en el curso ordinario de los acontecimientos humanos."

Consideramos que la indemnización de $200. concedida por la corte sentenciadora al demandante es una razonable compensación de acuerdo con las circunstancias concurrentes en este caso.

*Debe confirmarse la sentencia apelada.*