# 98 DTA 212

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

ANICETA VEGA RIVERA
Demandante-Apelada

v.

EMPRESAS PUERTORRIQUEÑAS DE DESARROLLO, INC. Y OTROS
Demandados-Apelantes

Núm. KLAN-96-00961

San Juan, Puerto Rico, a 18 de agosto de 1998

Panel integrado por su Presidente, el Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rodríguez García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El apelante, Empresas Puertorriqueñas de Desarrollo Inc., comparece, ante nos, para que revisemos una Sentencia emitida por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Mayaguez, en 6 de agosto de 1996 y archivada en autos el día 16 de agosto de 1996. En dicha Sentencia, el Tribunal ordenó a Empresas Puertorriqueñas de Desarrollo, Inc., que pagara a Aniceta Vega Rivera la cantidad de tres mil ($3,000) dólares en concepto de pérdidas de un vehículo de motor, más quinientos ($500) dólares por costas, gastos y honorarios de abogado. Inconforme con dicho dictamen, en 16 de septiembre de 1996, ▮ Empresas Puertorriqueñas de Desarrollo, Inc. presentó un

Escrito de Apelación en este Tribunal de Circuito de Apelaciones.

Resolvemos por los fundamentos que se exponen a continuación que resulta procedente revocar la sentencia apelada.

En 15 de marzo de 1994, la Sra. Aniceta Vega Rivera, (en adelante *"Aniceta"*), estacionó su vehículo marca Plymouth, modelo 1979, en el estacionamiento del centro comercial *"Mayaguez Mall"*, frente a la tienda *"Wal-Mart"*, a las 7:00 p.m.. Más tarde, apróximadamente a las 10:45 p.m., Aniceta fue a buscar su automóvil donde lo había dejado y no lo encontró; éste había sido hurtado. Rápidamente se llamó a la Policía de Puerto Rico y se levantó una querella. ■ Como consecuencia de los hechos narrados, Aniceta radicó una demanda en daños y perjuicios en contra de Empresas Puertorriqueñas de Desarrollo, Inc., h/n/c/ Mayaguez Mall, Angel Security Guard Inc., y el Fénix de Puerto Rico, (en adelante *"Empresas"*). En dicha demanda, Aniceta alegó que los demandados eran responsables del hurto del automóvil porque fueron negligentes. Alegadamente, la negligencia de Empresa Puertorriqueña consistió en, *"la utilización de deficientes medidas de seguridad y vigilancia en el estacionamiento de Mayaguez Mall."* Por tanto, - se alega en la demanda - le corresponde a Empresas, *"indemnizarle por la pérdida de su auto más por los daños emocionales que sufrió debido al hurto, para un total de nueve mil quinientos ($9,500) dólares. En adición, al pago de mil ($1,000) dólares en concepto de costas, gastos y honorarios de abogado."* ■

Luego de los procesos legales pertinentes, se vió el caso en los méritos, en 26 de septiembre de 1995. En 6 de agosto de 1996, el Tribunal de Primera Instancia emitió su sentencia, archivándose copia de la notificación, en 16 de agosto de 1996. ■

En las determinaciones de hechos formuladas en su Sentencia, el Tribunal estimó probado los siguientes hechos:

*"1. El 15 de marzo de 1995 [sic] a las 7:00 PM la demandante aparcó su vehículo marca Plymouth 1979, tablilla 00851 frente a la tienda Wal Mart del complejo comercial conocido como Mayaguez [sic] Mall y le fue hurtado.*

*2. El hurto es atribuible a Empresas Puertorriqueñas de Desarrollo Inc., HCN Mayaguez [sic] Mall al no ejercer el grado adecuado de vigilancia y control para evitar hurtos.*

*3. La unidad de la demandante estaba provista y tenía al momento del hurto de un aditamento conocido como "corta corriente." Además, contenía un "bastón" para la seguridad interior.*

*4. La demandante notificó el hurto a sus compañeros de trabajo e inmediatamente lo [sic] comunicaron vía teléfono a la policía la que demoró tres cuartos de hora.*

*5. La iluminación del área no era suficiente para la vigilancia del número de vehículos que ocupaban el área del aparcamiento.*

*6. Las condiciones del vehículo al momento del hurto eran perfectas y la pintura de fábrica, o sea, considerado un automóvil de reliquia con un valor de tres mil dólares ($3,000).*

*7. La prueba creída por el Tribunal demostró que en la caseta aledaña al lugar del hurto estaba desprovista de guardia de seguridad según la observación del demandante.*

*8. La parte demandada presentó como testigo al Sr. Juan Andrew González, administrador del complejo comercial Mayaguez Mall, quien se limitó a pormenorizar el sistema de vigilancia y no corroboró que el sistema estuviese cumpliéndose a cabalidad ya que no estaba presente en el lugar. Además, el tribunal no admitió la copia de la bitácora o libro por ser copia y estando disponible el original no se presentó ni fueron expuestas las razones para presentarlo. Ninguno de los supervisores, tampoco los policías fueron anunciados como testigos para corroborar el turno de vigilancia, lo que demuestra --como hecho probado-- que el plan de vigilancia no estaba funcionando.*

*9. La prueba testifical de la parte demandada adoleció de la preponderancia de prueba para desvirtuar las alegaciones de la parte demandante.*

*10. Como ejemplo de la determinación en el acápite número nueve (9) el testigo de los demandados aceptó que ese día había un policía en la garita de la tienda Wal Mart aunque no le constaba de propio conocimiento, lo que lleva al ánimo del tribunal dar como hecho probado que el plan de vigilancia no funciona, fue inadecuado y ofreció pocas garantías de confiabilidad y seguridad."*

Por consiguiente, el Tribunal de Primera Instancia, Sub-sección de Distrito, concluyó que *"... la parte demandante probó que la demandada incumplió su deber de proveer adecuada seguridad a los diferentes lugares de aparcamiento, específicamente el área de Wal Mart, que ese incumplimiento fue la causa adecuada del daño causado por el acto intencional de un tercero y el daño era previsible."* Conforme a lo anterior, el Tribunal declaró con lugar la demanda y condenó a Empresas Puertorriqueñas a pagar la cantidad de tres mil dólares ($3,000) a Aniceta, por la pérdida del carro, más quinientos dólares ($500) en concepto de gastos, costa y honorarios de abogado. Inconforme con dicho dictamen Empresas Puertorriqueñas radicó un escrito de apelación alegando los siguientes señalamientos de error:

*"Erró el Honorable Tribunal de Instancia al entender que la Parte Demandante-Apelada probó la negligencia de los Demandados-Apelados en la operación del sistema de seguridad y vigilancia.*

*Erró el Honorable Tribunal de Instancia al descartar de plano toda la prueba aportada por el testigo de la parte Demandada, Juan Andrew González.*

*Erró el Honorable Tribunal de Instancia al emitir determinaciones de hechos contrarias a la prueba desfilada y la cual no fue controvertida.*

*Erró al [sic] Honorable Tribunal Sentenciador al valorar en $3,000.00 un vehículo comprado en 1987 por $2,625.00, luego de siete años de uso y sin que mediara prueba pericial."*

**II**

Los señalamientos de error, transcritos anteriormente, se refieren a la apreciación de la prueba hecha por el Tribunal de Primera Instancia; por consiguiente, discutiremos todos los señalamientos conjuntamente.

El Código Civil dispone en su artículo 1802 que todo aquel *"que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".* Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. El Tribunal Supremo ha definido el concepto de daños como *"todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra".* *Santini Rivera v. Serv. Air, Inc.,* ___ D.P.R. ___ (1994), **94 J.T.S. 121,** a las págs. 182-183; *Galib Frangie v. El Vocero,* ___ D.P.R. ___ (1995)**, 95 J.T.S. 71,** a la pág. 924; *García Pagán v. Shilley Caribbean, Etc.,* 122 D.P.R. 193, 205-206 (1988).

Los principios de responsabilidad civil extracontractual, disponen que *"todo perjuicio, material o moral, da lugar a reparación si concurren tres requisitos o elementos: primero, se establece la realidad del daño sufrido; segundo, existe un nexo causal entre el daño y la acción u omisión de otra persona; y tercero, dicho acto u omisión es culposo o negligente".* *Santini Rivera v. Serv. Air. Inc., supra,* a la pág. 182; *Miranda v. E.L.A.,* ___ D.P.R. ___ (1994), **94 J.T.S. 152,** a las pág. 523; *Montalvo Feliciano v. Cruz Concepción,* ___ D.P.R. ___ (1998), **98 J.T.S. 6,** a la págs. 498-499. La figura del *"hombre prudente y razonable"* es el estándar de conducta que debe seguirse para determinar si una persona ha actuado de forma negligente o no. *"[L]a culpa o negligencia es la falta de debido cuidado, que a la vez consiste, esencialmente, en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias".* *Miranda v. E.L.A, supra; Montalvo Feliciano v. Cruz Concepción, supra,* a la pág. 499.

El objetivo de una acción en daños y perjuicios es que se indemnice al perjudicado, asignándole un valor económico al daño sufrido. *"El resarcimiento o indemnización pecuniaria consiste en atribuirle al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos, y una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado".* Ágosto Vázquez v. Woolworth, ___ D.P.R. ___ (1997), **97 J.T.S. 56**, 950.

El Tribunal Supremo en el caso de *J.A.D.M. v. Centro Comercial Plaza Carolina,* ___ D.P.R. ___ (1993), **93 J.T.S. 26**, a la pág. 10436, asume la definición del Departamento de Comercio que describe los centros comerciales como una *"[s]erie de unidades comerciales independientes, físicamente separadas en mismo edificio, pero integradas con el propósito de brindar una oferta complementaria de bienes y servicios."* Señala el Tribunal de Última Instancia que:

*"No cabe la menor duda, que con relación a los centros comerciales regionales, por la variedad de actividades que allí se llevan a cabo y el cúmulo de servicios que se ofrecen, o sea, por su naturaleza esencial, éstos están obligados a ofrecer al público que lo frecuenta, cuando las circunstancias así lo ameritan, un grado de protección y seguridad, adecuado y razonable, independiente del que puedan ofrecer las agencias de seguridad pública....., el grado de protección dependerá de las circunstancias particulares de cada caso."*

En nuestro ordenamiento jurídico para responsabilizar a un centro comercial por los daños cometidos por un tercero en sus predios en contra de un cliente es necesario probar que el centro comercial no cumplió con su *"deber de proveer adecuada y razonable vigilancia."* J.A.D.M. v. Centro Comercial Plaza Carolina, supra, a la pág. 10439.

Este deber se basa en la naturaleza de la actividad llevada a cabo en un centro comercial regional y en la previsibilidad de actos delictivos que depende, a su vez, del conocimiento de actos delictivos previos en el centro comercial o de circunstancias que hagan que una persona prudente y razonable pueda anticipar la ocurrencia de tales actos. El quebrantamiento de este deber dependerá de si las medidas tomadas fueron o no adecuadas. La adecuacidad de las medidas adoptadas a su vez dependerá, entre otras cosas, de: (1) la naturaleza del centro comercial y las actividades que allí se llevan a cabo; (2) la naturaleza de la actividad criminal que se esté registrando en el área del centro; y de (3) si las medidas de seguridad que se adopten son razonables y van dirigidas a minimizar la posibilidad de que los patrocinadores del centro sufran daños causados por la actividad criminal intencional de terceros.

Ahora bien, el hecho de que ocurra un acto delictivo por parte de un tercero que cause daños, no significa que automáticamente el centro comercial sea responsable. Tampoco el hecho que ocurra un daño de esta naturaleza quiere decir que las medidas de seguridad adoptadas por el centro son inadecuadas. El centro comercial no puede garantizar una seguridad absoluta. La responsabilidad no es automática ni absoluta; dependerá de los hechos y la totalidad de las circunstancias de cada caso en particular. *J.A.D.M. v. Centro Comercial Plaza Carolina, supra,* a la pág. 10439.

El Sr. Juan Andrew González, administrador de Mayaguez Mall declaró en la vista del juicio que:

El sistema de seguridad de Mayaguez [sic] Mall estaba estructurado así allá para el 15 de marzo de 1994.

*"a) guardias de seguridad contratadas de Wells Fargo Armored Services Inc [sic] los cuales se ubican en garitas, motoras y en los pasillos de[l] centro comercial.*

*b) empleados de mantenimiento que, aunque no prestan vigilancia, tienen instrucciones de comunicarse con la oficina de administración si se percatan de la ocurrencia de algún incidente.*

*c) garitas o casetas que ubican en el techo de los edificios que componen Mayaguez [sic] Mall y los portones de las áreas de cargas; las cuales ubican en Wal-Mart; en el portón de las torres del sistema de aire acondicionado; en la antigua tienda González Padín; en Sears, Citibank. Desde*

*dichas garitas se logra control visual de todas las áreas de estacionamiento de Mayaguez [sic] Mall.*

*Cada guardia tiene asignado un radio de comunicaciones, con acceso a la oficina. Los guardias asignados a las garitas tienen binoculares y radio de comunicaciones. Las guardias 24 horas al día motorizados, tres por turno, patrullan Mayaguez [sic] Mall.*

*d) un cuartel de la división de tránsito de la Policía de Puerto Rico es ofrecido a dicha agencia libre de costos y al cual están asignados numerosos vehículos que constantemente entran y salen de Mayaguez [sic] Mall. Obviamente, este cuartel no existe allí para vigilar a Mayaguez [sic] Mall, pero se le ofrece el local libre de costo por el efecto disuasivo de la delincuencia que tiene su presencia en Mayaguez [sic] Mall."*

Continúa declarando el Sr. González que el día y hora de los hechos, la vigilancia en Mayaguez Mall consistía de: ■

*"a) Cuartel de la Policía de Puerto Rico, División de Tránsito en la parte posterior de Mayaguez [sic] Mall.*

*b) Guardias de pasillo-uno en cada pasillo interior.*

*c) Guardiias [sic] de motora-tres, uno por cada área de estacionamiento.*

*d) Guardias en todas las garitas, inclusive uno en el portón de área de carga que ubica enfrente al área donde estacionó la demandada. En el horario en que ocurre el hurto había dos guardias en los pasillos y tres guardias en motora. Ya el centro comercial había cerrado. Específicamente en ese momento esa área era vigilada por una motora con un guardia de Wells Fargo."*

Según el análisis del Sr. González los guardias motorizados tardan entre 10 a 15 minutos recorrer su área asignada pasando por el frente de cada vehículo.

En el caso de autos, Aniceta no probó, como establece la doctrina en nuestro ordenamiento jurídico, que las medidas de seguridad establecidas por Empresas Puertorriqueñas no eran suficientes para minimizar las actividades criminales en el área. Para esto primero era necesario que presentara prueba de la criminalidad en el área, para entonces a base de esto establecer si las medidas de vigilancia y seguridad que tomó la compañía eran adecuadas y suficientes. De otra parte, es un principio de derecho que los daños que se aleguen tienen que ser probados en el juicio. En *Rivera v. Martínez,* 26 D.P.R. 760, 764 (1918), el Tribunal Supremo dijo que: *"Se debe alegar y probar la existencia real de los perjuicios causados".* Si no es así no se debe conceder indemnización alguna. *Torres Maldonado v. J.C. Penney Company,* ___ D.P.R. ___ (1992), **92 J.T.S. 62,** 9514; *Rodríguez Cruz v. Padilla Ayala,* 125 D.P.R. 486, 512 (1990). En el caso de autos, según se desprende de la exposición narrativa de la prueba, Aniceta testificó lo siguiente: ■

Allá para el 15 de marzo de 1994 trabajaba en la tienda Wal-Mart de Mayaguez [sic] Mall.

El día 15 de marzo de 1994 llegó a Mayaguez [sic] Mall a eso de las 7:00 de la noche. Su vehículo era un Plymouth Lancer, Modelo 1979. Estacionó su vehículo a algunos 100 a 150 pies de la entrada de la tienda Wal-Mart. Al salir de su trabajo notó que su vehículo no estaba; se lo habían robado.

El vehículo lo dejó con cortacorriente y bastón puesto. No había llaves adicionales del vehículo.

Al ver que el vehículo no estaba comenzó a llorar; llamó a la compañera de trabajo y llamó a la Policía de Puerto Rico. Desconocemos como se llevaron el carro.

Pagó $3,000.00 por el vehículo. Lo tenía hacía dos años. El carro estaba en perfectas condiciones. El vehículo estaba saldo. La Policía de Puerto Rico tardó tres cuarto de hora en llegar y la entrevistaron. Nadie llegó de la guardia de Mayaguez [sic] Mall. Frente a Wal-Mart hay postes con luminarias y ha visto guardias con motoras.

Al ser confrontada con factura acepto haber pagado $2,625.00 por el vehículo por allá para el 8 de agosto de 1987.

En su testimonio, Aniceta testificó de forma bastante general sobre el valor del carro. Cabe mencionar que señaló como valor del carro una cantidad mayor a la realmente pagada y dijo que lo había comprado hacía dos años, cuando realmente lo había comprado hacia siete (7) años (1987-1994). ■

Así la parte demandante dejó de presentar prueba del verdadero valor en el mercado del vehículo hurtado. Es necesario que el reclamante en un caso presente la evidencia necesaria para determinar el valor razonable de los daños de una forma justa y adecuada. *Moa v. E.L.A.*, 100 D.P.R. 573, 587 (1972). En cuanto a la vigilancia en el estacionamiento al momento de los hechos sólo menciona que ningún guardia del centro comercial llegó a ayudarla.

Es norma establecida en nuestra jurisdicción que un tribunal apelativo no intervendrá con la apreciación que de la prueba haya hecho un tribunal de primera instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Mercado Rivera, et.al. v. Universidad Católica de Puerto Rico,* ___ D.P.R. ___ (1997), **97 J.T.S. 106,** a la pág. 347; *Pueblo v. Meliá León,* ___ D.P.R. ___ (1997), **97 J.T.S. 110,** a la pág. 1356; *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987); *Quintana Tirado v. Longoria,* 112 D.P.R. 276, 292 (1982). Debe recordarse, sin embargo, que aunque el arbitrio del juzgador de hechos es respetable, no es absoluto y que una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. *Méndez de Rodríguez v. Morales Molina,* ___ D.P.R. ___ (1996), **96 J.T.S. 149,** a la pág. 347; *Cárdenas Maxán v. Rodríguez Rodríguez,* 125 D.P.R. 702, 714 (1990); *Vélez v. Secretario de Justicia,* 115 D.P.R. 533, 345 (1984); *Rivera Pérez v. Cruz Corchado, supra; Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826, 829 (1978). Aunque haya evidencia que sostenga las conclusiones de hecho de un tribunal, si de un análisis de la totalidad de la evidencia el foro apelativo queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideramos claramente erróneas. *Méndez de Rodríguez v. González Molina, supra.* Véase además: Cárdenas *Maxán v. Rodríguez Rodríguez, supra; Abudo Servera v. A.T.P.R.,* 105 D.P.R. 728 (1977); *Sanabria v. Sucn. González,* 82 D.P.R. 885 (1961).

El Tribunal de Primera Instancia incidió al establecer: (1) que el hurto era atribuible a Empresas Puertorriqueñas por no ejercer una adecuada vigilancia para evitar hurtos, cuando no tuvo ante sí prueba de la incidencia criminal en el área; (2) que la iluminación del área no era suficiente para la vigilancia del número de vehículos que ocupaban el área del aparcamiento cuando no se presentó evidencia de esto; (3) que las condiciones del vehículo al momento del hurto eran perfectas y la pintura de *"fábrica",* y consideró el automóvil como una *"reliquia"* **[9]** y lo valoró en tres mil dólares ($3,000), cuando tampoco se presentó prueba de esto; (4) que según la demandante en la caseta cercana al lugar del hurto estaba sin un guardia de seguridad, cuando Aniceta no declaró sobre esto. En resumen, la sentencia recurrida no puede prevalecer.

Por los fundamentos ante expuestos se revoca la Sentencia del Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Mayaguez, y se dispone la desestimación de la demanda en todas partes.

Notifíquese por la vía ordinaria.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 98 DTA 212

1. El día 15 de septiembre de 1996 cayó en domingo, por lo tanto, el recurso se presentó en tiempo, en 16 de septiembre de 1996.

2. Véase el Anejo G del Expediente de Apelación, pág. 25.

3. Véase el Anejo B del Expediente de Apelación, pág. 12.

4. Véase el Anejo A del Expediente de Apelación, pág. 1.

5. Véase la Exposición Narrativa, pág. 2.

6. Véase la Exposición Narrativa, pág. 3.

7. Véase la Exposición Narrativa, pág. 1.

8. Véase el Anejo F del Expediente de Apelación, pág. 21.

9. Tomamos conocimiento judicial de que se considera un auto como *"clásico"* o *"reliquia"*, a los 25 años de su producción. De 1979 a 1994, habían transcurrido 15 años, con la consiguiente depreciación.