GEORGE CRAWFORD, Respondent, *v.* THE WEST SIDE BANK, Appellant.

A bank may only pay out the funds of a depositor in the usual course of business and in conformity to his directions; it is not entitled to charge to him any payments, except those made at the time when, to the person to whom, and for the amount authorized by him, and where a check properly drawn by the customer has been subsequently altered in a material point without his consent, even if done so skillfully as to defy detection on examination, the bank is responsible for an omission . to discover the original terms and conditions thereof.

The question of negligence cannot arise unless the depositor has, in drawing the check, left blanks unfilled, or by some affirmative act of negligence

has facilitated the commission of a fraud by some one into whose hands the check has come.

*It seems,* however, that this responsibility is confined to the depositor alone; as to other persons through whose hands an altered check passes the bank is only responsible for the genuineness of the drawer's signature.

The change in the date of an instrument, whereby the time of payment is accelerated, is a material alteration, and, when made without the consent of the maker, destroys its validity.

Plaintiff on April 20th, intending to be absent from his place of business for a few days, drew his check on defendant, dated April 22d, payable to M., his clerk, which he left in charge of M., with directions to draw the money on the 22d, in case he did not return before noon of that day, and deliver the same to his foreman, to be used in paying his employes. M. having altered the date of the check to the 21st, on that day drew the money thereon and absconded. Plaintiff did not return until after the time appointed. In an action to recover an alleged balance on deposit, *held,* that defendant was not entitled to charge to plaintiff's account the amount of the check ; that the check never became a valid instrument for any purpose, as before it had any inception it was vitiated by a fraudulent alteration, and there being no original legal liability, the transfer of the check conveyed no right whatsoever as against plaintiff.

*Hall* v. *Fuller* (5 B. & C. 750), *Susquehanna Bank* v. *Loomis* (85 N. Y. 207), *Redington* v. *Woods* (45 Cal. 406), distinguished.

(Argued June 5, 1885 ; decided October 6, 1885.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made February 21, 1883, which reversed a judgment in favor of defendant, entered upon a decision of the court on trial without a jury. (Reported below, 17 J. & S. 68.)

This action was brought to recover an alleged balance on deposit by plaintiff with defendant.

The material facts are stated in the opinion.

*John C. Shaw* for appellant. The check was not avoided or vitiated by the alteration so as to affect its validity or impair its effect as originally drawn. The bank is entitled to charge it against the account of the maker for the correct amount, and at the true time he made it payable. (*Susquehanna Bk.* v. *Loomis,* 85 N. Y. 207, 210; *Nat. Bk. of Com.* v. *Nat. Banking As'n,* 55 id. 211; *Hall* v. *Fuller,* 5 B. & C. 750 ; *S. C.,* 8

D. & R. 464 ; *Redington* v. *Wood,* 45 Cal. 406 ; Morse on
Banking [2d ed.], 344; *Marine Bk.* v. *City Bk.,* 59 N. Y. 67,
76–7; *White* v. *Continental Bk.,* 64 id. 316 ; Pars. on Mer.
Law [1st ed.], 92 ; 2 Dan. on Neg. Inst. [3d ed.], § 1658 ;
2 Pars. on Bills, 80, 582; *Myers* v. *Henecke,* 55 N. Y. 412;
*Booth* v. *Powers,* 56 id. 22 ; 2 Pars. on Notes and Bills, 572 ;
2 Dan. on Neg. Inst., § 1373 ; 2 Pars. on Notes and Bills,
517, 574, 581; 6 Wait's Act. and Def. 485.) The alteration
of the date of a check is not a material alteration. (2 Pars.
on Notes and Bills, 582 ; *Atkinson* v. *Handor,* 2 Ad. & El.
628 ; Morse on Banking [3d ed.], 345, 372.) The plaintiff's
acts amounted to a direct ratification of Morgan's alteration,
and he cannot now abandon it as a mistake of law. (2 Pars.
on Notes and Bills, 575 ; *Booth* v. *Powers,* 56 N. Y. 22.) The
payment of the money on the $700 check to R. J. Morgan
was in law a payment to defendant. (*Johnson* v. *Donnell,* 90
N. Y. 1.) The bank had a right to presume the body of the
check was correct, being only bound to know its depositor's
signature. (*White* v. *Continental Bk.,* 64 N. Y. 316.) The
defendant had a right to introduce the check in evidence in
the form in which it received it. (*White* v. *Continental Bk.,*
64 N. Y. 316 ; 2 Pars. on Notes and Bills, 582.) The defend-
ant was wholly free from negligence in paying the checks.
(Whart. on Law of Neg., § 1 ; Edw. on Bills and Notes, 303,
310 ; *Turnbull* v. *Bowyer,* 40 N. Y. 456.)

*D. M. Porter* for respondent. The alteration of the date
of the check from the 22d to the 21st by R. J. Morgan was a
material alteration. (*Eastman* v. *Shaw,* 65 N. Y. 522 ; *Cow-
ing* v. *Altman,* 71 id. 435 ; *Marvin* v. *McCullum,* 20 Johns.
288 ; *Hall* v. *Wilson,* 16 Barb. 548 ; *Vance* v. *Lowther,* L. R.,
1 Ex. Div. 176 ; *Sloman* v. *Cox,* 1 Cromp., M. & R. 471 ;
*S. C.,* 5 Tyrw. 174; *Inglish* v. *Breneman,* 5 Ark. 377 ; 4 Am.
Dec. 96 ; *Prevost* v. *Gratz,* 1 Pet. C. C. 364 ; *McGrath* v.
*Clark,* 56 N. Y. 34 ; *Mohawk Bk.* v. *Broderick,* 10 Wend.
304 ; 13 id. 133, 134 ; *Salter* v. *Burt,* 20 id. 205 ; *Godin* v.
*Bk. of Commonwealth,* 6 Duer, 76 ; *Parsons* v. *North,* 13

East, 516; *Brewster* v. *McCardle*, 8 Wend. 479; *Miller* v. *Gilleland*, 9 Penn. St. 119; *Kennedy* v. *Lancaster Co. Bk.*, 18 id. 347; *Bank* v. *Penick*, 5 T. B. Monr. [Ky.] 25; *U. S. Bk.* v. *Russell*, 3 Yeates [Penn.], 391; *Henderson* v. *Wilson*, 6 How. [Miss.] 65; *Hervey* v. *Harvey*, 15 Me. 357; *Hocker* v. *Jamison*, 2 W. & S. [Penn.] 438; *Humphrey* v. *Guillow*, 13 N. H. 385; Chitty on Bills [12th Am. ed. from London, 9th ed.], 208, 209 [182*]; Shepherd's Touchstone, 68; *Master* v. *Miller*, 1 Smith's Lead. Cas. pt. 2 [7th Am. ed.], 1254; *S. C.*, 4 Term R. 320; 5 id. 367; 2 H. Black. 141; *Outhwaite* v. *Luntley*, 4 Camp. 179; *Hall* v. *Fuller*, 5 B. & C. 750; *Adair* v. *Sanderson*, 14 Reporter, 114; Dan. on Neg. Inst., §§ 1373, 1374, 1417, 1418; *Suffell* v. *Governor and Company of Bank of England*, 4 L. T. Rep. [N. S.] 146; *S. C.*, 26 Alb. L. J. 406; *Bruce* v. *Westcott*, 3 Barb. 374; *Goodman* v. *Eastman*, 4 N. H. 455; *Sentance* v. *Poole*, 3 C. & P. 1; *Smith* v. *Mercer*, 6 Taunt. 76.) The plaintiff was not negligent. (*Baxendale* v. *Bennett*, note to *Knoxville Bk.* v. *Clarke*, 33 Am. Rep. 137; *Bk. of Ireland* v. *Evans Charities*, 5 H. of L. Cas. [Clark] 389; *Lehman* v. *C. R. R. & B. Co.*, U. S. Cir. Ct., M. D. Alabama; 4 Wood's U. S. C. C. 560; *S. C.*, 12 Fed. Rep. 595.)

RUGER, Ch. J. The relation existing between a bank and its depositor is, in a strict sense, that of debtor and creditor; but in discharging its obligation as a debtor, the bank must do so subject to the rules obtaining between principal and agent.

In disbursing the customer's funds, it can pay them only in the usual course of business, and in conformity to his directions. In debiting his account it is not entitled to charge any payments except those made at the time when, to the person whom, and for the amount authorized by him. (*Wheeler* v. *Guild*, 20 Pick. 545; Dan. on Neg. Inst., § 1818.) It receives the depositor's funds upon the implied condition of disbursing them according to his order, and upon an accounting is liable for all such sums deposited, as it has paid away without receiving valid direction therefor. The bank is from necessity responsible for

any omission to discover the original terms and conditions of a check, once properly drawn upon it, because at the time of payment, it is the only party interested in protecting its integrity, who has the opportunity of inspection, and it therefore owes the duty to its depositors of guarding the fund intrusted to it, from spoliation. This liability arises, although an alteration of a material part of his order has been effected, even though it be done so skillfully as to defy detection by examination. (Dan. on Neg. Inst., § 1660.) This follows from the fact that after it is put in circulation, it passes beyond the reach of its maker, who has no opportunity until after it has fulfilled its office, of inspecting it, and protecting himself from the loss, occasioned by a fraudulent alteration. This opportunity the banker has and he is responsible for any want of vigilance, in detecting the alteration of an order after it has once been correctly drawn, with its blank places properly filled up, and is put in circulation by the maker.

The liability of the banker, however, for a loss occasioned by neglect to exercise such vigilance, is confined to the maker alone. So far as other parties, through whose hands an altered check passes, are concerned, they have the same opportunity for detecting fraudulent alterations in the body of the check that the banker has, and as to them, after payment, he is responsible only for the genuineness of the maker's signature. (*Bank of Commerce* v. *Union Bank*, 3 N. Y. 230.) The principle stated in *White* v. *Continental Bank* (64 N. Y. 316), *Marine National Bank* v. *National City Bank* (59 id. 67), and kindred cases, that the drawees of a check or bill are held to a knowledge of the signature only of their correspondents, the drawers, and not for a want of knowledge of the genuineness of the body of the instrument, applies only as between them and such other parties as have equal opportunity of inspection, and equal means for determining the existence of an alteration. Such parties take the paper relying solely upon the reputed responsibility of their transferers, and the other parties to it, and its apparent genuineness, and they, therefore, deal in it at their peril. They have no duty to perform in respect to it except that of guard-

ing their own interests, and in buying and transferring it to others, they take the risk of loss, occurring from fraudulent alterations.

The questions arising on such paper between drawee and drawer, however, always relate to what the one has authorized the other to do. They are not questions of negligence or of liability of parties upon commercial paper, but are those of authority solely. In this view it has been held when the check of a depositor was fraudulently altered from £3 to £200 after issue, and was paid by the bank at the latter amount, that the bank was entitled to charge only £3 to the depositor. *Hall* v. *Fuller*, 5 B. & C. 750. BAILEY, J., said : "If the banker unfortunately pays money belonging to the customer upon an order not genuine he must suffer, and to justify the payment he must show that the order was genuine, not in the signature only, but in every respect."

The question of negligence cannot arise unless the depositor has, in drawing his check, left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the check may come. (*Young* v. *Grote*, 4 Bing. 253; Dan. on Neg. Inst., § 1659.)

The theory that a party who makes and issues commercial paper, properly and carefully drawn, to express the liability which he intends to assume, is chargeable with negligence on account of the criminal act of another in altering it after its issue, would render him a warrantor against such acts and is repugnant to justice and reason.

In the present case the plaintiff, on the 20th of April, intending to be absent from his place of business for a few days, drew his check on the defendant, dated April 22, for $700, payable to his clerk, one Morgan, for the purpose of enabling him to obtain funds to pay wages becoming due to the drawer's employes on the 22d. The check was left in the drawer's check-book in his safe, with directions to Morgan, who had a key to the safe, to take the check on the 22d, draw the money and deliver it to his foreman to pay out to the employes in case the drawer did not return before noon upon that day.

The plaintiff did not return until after the time appointed, but on the 21st Morgan took the check and having altered the date to the 21st drew the money from the bank and absconded with the funds on the same day.

The check as drawn conferred no authority on the bank to pay it before its date. (*Godin* v. *Bank of Commonwealth*, 6 Duer, 76; *Mohawk Bk.* v. *Broderick*, 10 Wend. 304; *S. C.*, 13 id. 133.) Such payment did not, therefore, justify the bank in charging the check to the plaintiff. The bank undoubtedly had the same right, as any other person, to purchase a post-dated check, and enforce it against the drawer in case of his liability thereon. This right to enforce payment, however, depended upon the question, whether the purchaser became a *bona fide* holder of the paper, and also whether it was then a valid obligation of the maker. A material alteration of its terms after execution and before payment would destroy its validity. A change in its date, whereby the time of its payment was accelerated, was undoubtedly such an alteration. Thus it was held in the case of *Vance* v. *Lowther* (L. R., 1 Exch. Div. 176), where the date of a check had been altered from March 2d to March 26th, and as thus altered was attempted to be enforced against the drawer by one who had paid value to an unlawful holder for it, that such alteration vitiated the check, and no recovery could be had thereon.

Whenever the legal rights and liabilities, of a maker of commercial paper, are changed in a material respect by a fraudulent alteration of the obligation, such alteration vitiates the instrument, and the question whether it is material or not is one of law for the court. (2 Pars. on Notes and Bills, 582; 2 Pars. on Cont. 721; Dan. on Neg. Inst., §§ 1373, 1658; *Booth* v. *Powers*, 56 N. Y. 29.)

The absence of a date upon a negotiable instrument at its inception, or the fact that it is post or antedated, may not be material upon the question of its validity; but when a date has been once inserted, and its time of payment has been thus fixed, such date is material and cannot be altered without the consent of the maker. (Dan. on Neg. Inst., 1376–77, 1577–78;

2 Pars. on Notes, 552; *Stephens* v. *Graham*, 7 Serg. & R. 505.)

In the present case the check was never a valid instrument for any purpose, because it had become vitiated by a fraudulent alteration before it had any inception. It never came into the hands of any person, entitled to enforce it for any amount, or for any purpose, as against its maker. The whole object of the check had failed, before the legally appointed time for its payment, by reason of the unauthorized act of the bank in paying it, and thereby enabling the fraudulent holder to abscond with its proceeds. The check was never, therefore, a legal obligation enforceable against the drawer by its owner and holder.

It is claimed by the appellant that even if it be held that the defendant had no authority to pay this check on the 21st, that having become its owner and having kept it until after its true date, it was then entitled to charge it to the plaintiff, because it then coresponded not only as to amount, but as to the time of payment, with the obligation which the plaintiff intended to, and did, in fact, assume. There is some authority for the proposition that a banker after payment, has the right to hold an altered check for its correct amount as against the maker. (*Hall* v. *Fuller*, *supra*; *Susquehanna Bk.* v. *Loomis*, 85 N. Y. 207; *Redington* v. *Woods*, 45 Cal. 406.) In these cases, however, the checks had received a legal inception upon their delivery to holders for value, and, as thus delivered, authorized their drawees to pay them, and debit the makers with the sum originally specified therein. Such instruments not only conferred authority to pay their true amount, upon their drawees, but also created a legal liability in case of non-payment, against their drawers for the repayment of that amount, and the right to enforce such power or liability would, no doubt, pass as an incident to the transfer of the check, to any holder in good faith. (2 Pars. on Bills and Notes, 582.) But we cannot see how the principle stated in these cases can benefit the defendant, for the possibility that the check could ever become a legal liability in the hands of any person was

destroyed by its fraudulent alteration before inception. In the hands of Morgan the check created no liability in his favor against its drawer. There never existed, therefore, either a valid written obligation against the plaintiff, or an original legal liability to any one, enforceable, after the destruction of the written instrument by its fraudulent alteration.

The transfer of the check by Morgan, under the circumstances, could not, therefore, carry to another a right founded either upon the vitiated check, or upon an original liability which never in fact existed.

When a negotiable instrument constitutes in itself the only obligation existing against its maker, all remedies thereon are lost by its fraudulent alteration, and the law refuses to create a new contract to supply the place of the one destroyed. (*Booth* v. *Powers*, 56 N. Y. 31 ; 2 Pars. on Bills, 572 ; *Meyer* v. *Huneke*, 55 N. Y. 412.)

It follows that there is no principle upon which the defendant has the right to charge the check in question for any amount to the plaintiff.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.