[Civ. No. 24017. Second Dist., Div. One. Dec. 14, 1959.]

RICHARD S. WRIGHT et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Loughman & Fay, John F. Fay and Robert J. Lagomarsino for Appellants.

Samuel B. Stewart, Hugo A. Steinmeyer and Robert H. Fabian for Respondent.

LILLIE, J.—In May of 1955, plaintiffs as partners in a contracting business had a commercial account with defendant's Buena Center Branch in the city of Ventura; checks on that account required the joint signatures of both partners. Employed by them as office manager was one Clarke whose duties included the filling out of checks drawn by plaintiffs in payment of the firm's obligations. Plaintiff Trimmer took a trip to Sacramento on May 3. Prior thereto, he and plaintiff Wright (who, it later appears, was not active in the management of the business from May 5 to May 9) signed several checks in blank and delivered them to Clarke. Clarke was authorized, when funds were available, to fill in the date, amount and payee creditor of the firm. On May 4, plaintiffs' balance was $6.39, but on May 5, Clarke collected a $10,000 account receivable and deposited it in the partnership account. On May 6, Clarke handed one of the blank checks to a secretarial employee of plaintiffs and instructed her to fill in the date and the name Ben D. Clarke as payee. The employee dated the check May 7, 1955 (a Saturday); thereafter Clarke filled in the amount of said check in the sum of $3,500 and later

that day (May 6), sometime between 3 and 6, presented it for encashment at the Buena Center Branch. Having produced documentary evidence of both his identity and authority (the instrument being designated in the court's findings as a "power of attorney"), and having stated to the teller that he needed the money for a payroll, Clarke received cash in the amount of the check. Defendant's teller was under instructions to cash no postdated check, and her failure to observe the date of the check is admitted.

The following Monday, May 9, Clarke failed to keep certain appointments. Plaintiff Trimmer became suspicious and telephoned defendant bank between 9 and 9:30 to ascertain the status of the partnership account, at which time the bookkeeper informed him concerning the $3,500 check. Trimmer advised that the transaction was never authorized by him or his partner. Clarke subsequently pleaded guilty to grand theft and was sentenced to prison.

Plaintiffs' present action to compel restitution by defendant was in two counts, breach of contract and negligence. The answer denied the complaint's pivotal allegations and by way of affirmative defense pleaded an estoppel based on plaintiffs' negligence which proximately caused the loss to occur. Following a nonjury trial, judgment was rendered for defendant.

On appeal it is contended that the findings of fact are insufficient to support the judgment and that such judgment is against the law; it is also claimed that the court erred in failing to make findings, though requested to do so, on two material issues.

While it is the general rule that, as between a bank and its customers, the payment by the bank of forged or altered checks is made at its peril and cannot be charged against the depositor's account, such payment may be justified on principles of estoppel or on the basis of negligent or misleading conduct by the depositor which directly caused the bank to pay the instrument (8 Cal.Jur.2d, Banks, 65).

Recognizing this rule, appellants also concede that an estoppel will arise in favor of the drawee bank where a depositor signs checks in blank and delivers them to his agent who thereafter fraudulently fills in the blanks (*Edelen* v. *Oakland Bank of Savings*, 39 Cal.App. 302 [178 P. 737]; *Rancho San Carlos* v. *Bank of Italy*, 123 Cal.App. 291 [11 P.2d 424]). However, say appellants, the rationale followed in the cases just cited may not be here applied because (1) the check involved was postdated and (2) in neither case,

unlike the situation at bar, was the bank negligent. ██ With respect to this latter point, it is settled that the bank must itself have been free from negligence before the depositor is estopped to challenge the payment (*Pacific Coast Cheese, Inc.* v. *Security-First Nat. Bank*, 45 Cal.2d 75, 78 [286 P.2d 353]), and ordinarily it is for the trier of fact to determine whether that defense has been sufficiently established (*Pacific Coast Cheese, Inc.* v. *Security-First Nat. Bank, supra*, p. 78).

██ ██ An essential characteristic of a check is that it be payable on demand (*Torrance Nat. Bank* v. *Enesco F. Credit Union*, 134 Cal.App.2d 316, 320 [285 P.2d 737]; Civ. Code, § 3265a); however, a postdated check is none the less a check because postdated, being payable on or at any time after the date of its date (10 C.J.S. 412, § 5c; 9 C.J.S. 696, § 345) and it has also been declared to be within the phrase "checks and drafts" used in a company's resolution on the signature furnished by it to a bank, as well as an "order of withdrawal" authorizing the bank to assume authority as provided in section 953 of the Financial Code. (*Torrance Nat. Bank* v. *Enesco F. Credit Union, supra.*) Too, section 3093 of the Civil Code provides: "The instrument is not invalid for the reason only that it is antedated or postdated provided this is not done for an illegal or fraudulent purpose. The person to whom an instrument so dated is delivered acquires title thereto as of the date of delivery."

Appellants do not dispute the fact that the instrument in question was complete and regular on its face and bore the genuine signatures of the plaintiffs, nor that it was a negotiable instrument albeit payable at a future date. They do contend that it was error for the court to conclude that respondent had a duty to pay the check and was therefore entitled to charge appellants' account in the amount thereof; and argue that a postdated check confers no authority on a bank to pay the amount for which it was drawn out of the drawer's funds before its date (*Crawford* v. *West Side Bank*, 100 N.Y. 50 [2 N.E. 881, 883, 53 Am.Rep. 152]). They also rely on another New York case: "The common law rule of liability of a bank in paying prematurely a postdated check is succinctly set forth in 9 C.J.S., Banks and Banking, § 345, p. 696: 'A postdated check is payable on or at any time after the day of its date; the bank ought not to pay it, if presented earlier, and if it does the depositor can recover his money.' " (*Montano* v. *Springfield Gardens National Bank*, 207 Misc. 840 [140 N.Y.S.2d 63, 65].) Cited by the editors of Corpus Juris Secundum for the proposition quoted is a Georgia case,

*Smith* v. *Maddox-Rucker Banking Co.*, 135 Ga. 151 [69 S.E. 1031], but an examination of the opinion therein reveals that the pertinent declaration was dictum and unnecessary to the decision reached. Certain text writers are also said to concur in the view that a bank pays a postdated check before the day upon which it is dated upon its own responsibility (Michie, Banks and Banking, vol. 5A, § 169, p. 431; Zollman, Banks and Banking, vol. 6, p. 110, § 3702); but in the last analysis we are governed by principles of law, correct though they be, only to the extent that they are applicable to the facts under consideration.

In the case at bar the claimed negligence of the bank was arrayed against that charged to the drawer of the instrument. The trial court found in favor of the bank, making extensive findings which are predicated on the following rule: "The question of negligence cannot arise unless the depositor has, in drawing his check, left blanks unfilled, *or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the check may come.*" (*Crawford* v. *West Side Bank, supra* (N.Y., 2 N.E. 881, 882).) (Emphasis added.) As stated in *Edelen* v. *Oakland Bank of Savings, supra*, 39 Cal.App. 302, 303: "The plaintiff's own negligence was the proximate cause of his loss." The trial court expressly found the postdating of the check by the secretarial employee was accidental; since the instrument was entirely blank, except for the signatures, when it left appellants' hands, Clarke could have filled it in for May 6, or any other time. Indeed, the record discloses that on May 5, a check in the sum of $1,613 was negotiated by Clarke at defendant's same branch after he had filled in the necessary blanks on its face. Appellants abandoned any claim to restitution therefor on the ground that it was "currently dated and therefore due on sight." We are of the view that this attempted distinction of the check in suit may not be sustained.

Elaborating further, suppose appellants had made one of themselves the payee of the instrument and mistakenly inserted May 7 as the date; could they then validly argue, after the encashment of the check on May 6, that their account should not be charged accordingly? The only distinguishing factor seems to be the written authority presented by Clarke, since the check involved was perfectly regular on its face and the fact of postdating did not otherwise invalidate it under the law. This authority consisted of a document dated four

days previously upon the letterhead of an attorney and addressed to People's Lumber Company: "This is to certify that Ben D. Clarke is now the manager of my business known as L. W. Trimmer and that he has complete authority, and control of the affairs of the business." If this were not enough to warrant the action taken, it is provided by section 3095, Civil Code, that "(w)here an instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount . . ." Appellants complain that the evidence with regard to the "power of attorney" is "weak and inconclusive"; also, that the teller did not actually "rely" thereon and "reliance" is an indispensable element necessary to establish an estoppel (18 Cal.Jur.2d 407, 410). We have examined the teller's testimony, and while it might indicate that she considered the document solely for the purpose of identification, the inference reflected by the court's finding is not unreasonable and may not be disturbed.

 Respondent has argued the applicability of section 990, Financial Code, which provides that a bank "may disregard an order stopping payment of a check unless the order is in writing, is signed by the drawer, describes with certainty the check payment of which is to be stopped, and is delivered to the particular office or branch office of the bank on which the check is drawn before the check is certified or paid." Appellants, of course, did not comply with the foregoing requirements, although verbal instructions were given the bank's bookkeeper by Trimmer on the morning of May 9. Contrary to the bank's position, the check was charged to appellants' account on May 6—the bank's statement, received as an exhibit, so shows—and the giving of notice under section 990, *supra,* would have been a useless act which the law does not require (Civ. Code, § 3532). This, therefore, would seem to make inappropriate any discussion of the question, which is argued at some length in the briefs, as to whether respondent became a holder in due course and entitled to "purchase" the check with a right of offset.

 While we do not wholeheartedly concur in the court's conclusion that respondent was wholly free from negligence, believing that both parties to some extent failed to exercise

due care in the premises, nonetheless each was the victim of Clarke's fraudulent conduct, and appellants, having clothed their office manager with apparent ownership of the check, enabled him to perpetrate the fraud and must bear the consequences thereof. As said in *Kaku* v. *Giffen*, 13 Cal. App.2d 683 [57 P.2d 1001], quoting *M'Neil* v. *Tenth Nat. Bank*, 46 N.Y. 325 [7 Am.Rep. 341], "Where the true owner holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third persons are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which through negligence, or mistaken confidence, he caused or allowed to appear to be vested in the party. . . ." This principle is recognized by section 3543 of the Civil Code, which reads: "Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened, must be the sufferer." See also *Couture* v. *Ocean Park Bank*, 205 Cal. 338, 344 [270 P. 943, 61 A.L.R. 267].

Appellants' only other point relates to the court's refusal to make a finding that (1) they orally notified the bank on Monday, May 9, and (2) the teller was under instructions to inspect the check for a date and failed to do so. As to (1), we have already concluded that the giving of a stop payment order would have been a useless act; furthermore, the testimony of Trimmer as to the occurrence was inconclusive and justified the court's rejection of the proposed finding. As to (2), such a finding under the circumstances of the case would be immaterial in view of the court's conclusion that appellants' negligence and not the postdating of the check was the proximate cause of the loss sustained.

The judgment is affirmed.

Fourt, Acting P. J., and Shea, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 10, 1960. Peters, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.