GERARDA RIVERA DE RIVERA y NICOMEDES RIVERA, demandantes y recurridos, *v.* BANCO CRÉDITO Y AHORRO PONCEÑO, demandado y recurrente.

*Número:* 241    *Resuelto:* 14 de diciembre de 1962

*Miguel Marcos Morales* y *Miguel Marcos Contreras,* abogados del recurrente; *Guillermo Bauzá,* abogado de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Por haber pagado el banco demandado unos cheques posfechados, la cuenta corriente del demandante no tenía fondos suficientes para cubrir el importe de otros cheques

de fechas anteriores presentados al cobro, y por ese motivo no fueron honrados. El demandante alega que esto le ocasionó daños a su crédito. En unión de su esposa inició pleito para resarcirse. El tribunal de instancia le concedió $10,000 más $600 de honorarios de abogado. Resolvimos revisar esta sentencia. ■

La sección 13 de la Ley Uniforme de Instrumentos Negociables—19 L.P.R.A. sec. 13 (ed. 1961)—implícitamente reconoce la validez de un cheque posfechado. Dispone el citado precepto que "[n]o carece de validez el documento por la sola razón de llevar fecha anterior o posterior, siempre que eso no se hiciere con fines ilegales o fraudulentos. La persona a quien se entregare un documento fechado de ese modo adquiere la propiedad del mismo desde la fecha de la entrega". Desde antes de adoptarse el estatuto por la Conferencia de Leyes Uniformes en el año 1896, se sostenía la validez de los cheques posfechados. *Andrew & Wilson* v. *Blachly & Simpson*, 11 Ohio St. 89 (1860); *Mohawk Bank* v. *Broderick*, 13 Wendell 131 (N. Y. 1834); Breckenridge, *The Negotiability of Postdated Checks*, 38 Yale L. J. 1063 (1929). [2-5]

Es característica del cheque el ser pagadero a la presentación. Así lo establece el Art. 186 de la Ley de Instrumentos Negociables, —19 L.P.R.A. sec. 362 (ed. 1961)— *Alvarez* v. *National City Bank*, 46 D.P.R. 85 (1934). El hecho de que el cheque esté posfechado no altera la situación. Es pagadero a la presentación desde la fecha que ostenta. *Wright* v. *Bank of America*, 176 Cal. App.2d 176, 1 Cal. Rptr. 202, 76 A.L.R.2d 1293 (1959); *State* v. *Brookshire*, 329 S.W.2d 252 (Mo. 1959); *State* v. *De Nicoca*, 126 N.E.2d 62 (Ohio 1955); *State* v. *Taylor*, 73 S.W.2d 378 (Mo. 1934); *Kuflick* v. *Vaccaro*, 170 N.Y.S. 13 (1918); *American Agricultural Chemical Co.* v. *Scrimger*, 100 A. 774 (Md. 1917); *Symonds* v. *Riley*, 74 N.E. 926 (Mass. 1905). Por ser los cheques posfechados pagaderos desde la fecha que exhiben,

si un banco los paga antes de esa fecha, lo hace bajo su responsabilidad, y no puede cargar el pago a la cuenta del librador. *Smith* v. *Maddox-Rucker Banking Co.*, 68 S.E. 1092 (Ga. 1910); *Crawford* v. *West Side Bank*, 2 N.W. 881 (N.Y. 1885); 5A Michie, *Banks & Banking*, sec. 169, pág. 431 (ed. 1950); Anotación: *"Bank's Liability for Paying Post dated Check"*, 76 A.L.R.2d 1301 (1961); Comentarios, *"Post Dated Checks"*, 29 Yale L.J. 321 (1920). Para evitar las consecuencias que el pago prematuro conlleva, algunos bancos incluyen en los contratos de cuentas corrientes cláusulas mediante las cuales se les exime de responsabilidad en caso de que se pague un cheque antes de su fecha.[1] *Kalish* v. *Manufacturers Trust Co.*, 191 N.Y.S.2d 61 (1959); *Montano* v. *Springfield Gardens Nat'l. Bank*, 140 N.Y.S.2d 63 (1955); *In re Rousos Will*, 91 N.Y.S.2d 551 (1949); *Chase Nat. Bank of City of N.Y.* v. *Battat*, 78 N.E.2d 465 (1948); *Pyramid Musical Corp.* v. *Floral Park Bank*, 48 N.Y.S.2d 866 (1944). La ley expresamente establece que no existe responsabilidad cuando el librador persigue un fin fraudulento al posfechar el cheque. Ley Instrumentos Negociables, Art. 13—19 L.P.R.A. sec. 13 (ed. 1961)— *Republic Life & Accident Ins. Co.* v. *Hatcher*, 51 S.W.2d 922 (1932). ▪

Establecido que el banco no podía cargar a la cuenta del demandante el pago de los cheques posfechados, es inevitable la conclusión de que incurrió en responsabilidad al no pagar los otros cheques presentados al cobro y que no fueron honrados por insuficiencia de fondos. *Maymí* v. *Banco Popular*, 63 D.P.R. 536 (1944); *Ríos* v. *National City Bank*, 51 D.P.R. 488 (1937); *Smith* v. *Maddox-Rucker Banking Co.*, supra.

Procede ahora considerar las otras cuestiones planteadas. En primer lugar, la impugnación que se hace a la deter-

---

[1] En el presente caso no se presentó prueba al efecto de que entre el demandante y el banco se conviniera que este último no sería responsable del pago de cheques posfechados por lo que no tenemos que decidir sobre la validez de esta clase de convenios.

minación del tribunal sentenciador al efecto de que "a consecuencia de no haber honrado el banco dichos seis cheques, varias firmas a las cuales los demandantes compraban a crédito para su negocio le restringieron o cerraron el crédito. Esto a su vez trajo como consecuencia que el negocio decayó hasta el extremo de que los demandantes fueron a la quiebra a fines de 1958 con una deuda de más de $36,000.00".

Analicemos la prueba presentada. La cuenta corriente que el demandante mantenía en el banco demandado revela sobregiros en 18 de mayo de 1956 por $221.69; en 18 de junio por $330.25; en 2 de julio por $54.62; en 20 de julio por $4,286.57; en 11 de septiembre por $321.56; en 23 de octubre por $107.97; en 20 de diciembre por $292.30; en 24 de diciembre por $528.20; en 26 de diciembre por $809.15; en 18 de enero de 1957 por $87.78; en 24 de enero por $32.20; en 28 de enero por $20.80; en 4 de marzo por $1,188.93. Así la prueba documental establece que el banco demandado consecuentemente honraba los cheques expedidos por el demandante Nicomedes Rivera aunque en su cuenta no hubiera fondos suficientes para cubrir su pago. Desde el 18 de mayo de 1956 hasta el mes de marzo del año siguiente, el banco demandado en trece ocasiones distintas pagó cheques expedidos por el demandante a pesar de que no tenía fondos para hacerlos efectivos. Este hecho, además de establecer que el banco cooperó efectivamente con el demandante facilitándole el pago de los cheques que libraba, demuestra, en ausencia de su justificación que la situación económica en que se desenvolvía el negocio del demandante no era satisfactoria. El 19 de diciembre de 1956, el balance de la cuenta era de $16.36 y el banco honró todos los cheques presentados al cobro hasta el 27 de diciembre montando el sobregiro a la cantidad de $809.15.

El incidente de los cheques devueltos ocurrió en marzo de 1957. Luego de iniciada la acción el día 14 de febrero de 1959 comparecen dos testigos a deponer y lo hicieron ante

el Juez Romero del Tribunal Superior. Uno de los testigos es el contador del Royal Bank of Canada, Sucursal de Mayagüez, quien identificó la firma en una carta dirigida por ese banco al demandante informándole que el cheque que él le enviara para abonar a un pagaré fue devuelto con la expresión "Refiérase al librador". Le informa asimismo la referida carta que ignoran "el motivo por el cual fuera devuelto y le suplicamos haga los arreglos necesarios con su banco para que el cheque sea pagado a su nueva presentación". El cheque a que la carta se refería fue uno de los que no fue honrado por el banco demandado. Pero este mismo testigo declara que en el año 1959, todavía el pagaré, que era uno a presentación, no había sido saldado y que el demandante estaba abonando pagos parciales. Así, por ser un documento vencedero a presentación, el banco pudo haber exigido su pago inmediatamente después del incidente del cheque y no lo hizo y siguió aceptando pagos parciales. Ciertamente el crédito del demandante con esta institución no fue afectado. El deponente declara además que el demandante no ha solicitado nuevo crédito y a la pregunta de si lo hiciera si se lo concederían contestó "Tendríamos que considerar el caso". El otro deponente, el representante de la Casa Blanes de Mayagüez, declara al efecto de que el demandante tiene pendiente una deuda desde antes del incidente de los cheques que no ha saldado. Es una deuda del 24 de diciembre de 1956. Además tiene pendiente de pago cuentas del 22 de abril de 1957 y 28 de mayo de 1958. Claramente si su crédito quedó afectado con la Casa Blanes fue por no pagar esas acreencias.

El demandante mantenía una línea de crédito con la casa de los hermanos Argüelles. Uno de ellos declaró, pero de la documentación presentada no surge que el crédito del demandante fuera afectado por el incidente de la devolución de los cheques. El juez resume así lo que los libros de la Casa Argüelles revelan:

"La Corte: Aquí hay un balance, abril de 1955, de $13,000, $10,000, $8,000, $10,000. El balance continúa en el año 52, $7,000, $5,000, $2,000, $8,000; el año 52 prevalece $10,000, $11,000, sigue $7,000, $8,000, $8,000, $9,000, $10,000, $8,000, $9,000. Entonces comienza a bajar. Yo creo que es fair decir que desde el 51 prevalece un crédito de alrededor de $9,000; que eso bajó en el 56 aproximadamente de tres a $4,000. La situación sigue igual en el 57. En el 57 subió. Pueden estipular para el récord, invito a los compañeros para no tener que retener estos documentos aquí, que desde el año 51, en que comienza la cuenta corriente del demandante con Argüelles, se destacan los siguientes datos: primero, que desde el año 1951 hasta el 56 inclusive este último prevalece un crédito de alrededor de $9,000, más o menos, promedio. Desde el año 51 hasta el 55 inclusive el año 55. Desde el año 56 se nota un descenso en el crédito con un promedio de aproximadamente $3,000, en el año 56 un promedio de más o menos $3,000; y esta situación prevalece durante el año 57. En este año 57 el primer balance que aparece es de junio 21 de $2,600 y pico, y ahí subió a $3,000, $4,000 y hasta $5,000 en agosto del 57. Entonces tenemos que del 51 a 1955 los libros reflejan un crédito promedio de aproximadamente $9,000. En el año 56 bajó a aproximadamente $3,000. Que esta cantidad prevaleció aumentando a $5,000 para agosto y en septiembre del mismo año. Y que de ahí en adelante ha continuado entre dos y $3,000, según lo hemos indicado."

Esta prueba no demostró en forma alguna que la Casa Argüelles le restringiera el crédito a partir de abril de 1957. Siguió ofreciéndole el crédito que las necesidades del demandante requerían. Durante el 1957 refleja un aumento sobre el año anterior, demostración palpable de que su crédito no fue afectado con esta casa.

El demandante compraba a dos casas exportadoras de tejidos en los Estados Unidos, la Pacific Mills Fabrics, Inc. y la Kay-Bee Export Co., Inc. Sostiene que luego de abril de 1957 estas casas le restringieron el crédito. Consideramos la evidencia presentada a ese efecto. Declararon dos representantes de estas casas en Puerto Rico. Además se

presentaron dos cartas enviadas por cada una de ellas al demandante.

Rafael López Vázquez es representante de estas dos entidades en Puerto Rico. Le vendía desde el año 1949 al demandante. Afirma que en septiembre de 1957, o sea seis meses después del incidente que dio margen a este pleito, la Pacific Mills le extendió crédito al demandante. Se confirmaron las órdenes pero declara que "parece que en vista de la cuantía de la orden ellos pidieron cierta información, y los datos que recibieron no fueron satisfactorios según yo fui informado". Así, seis meses después de abril de 1957, la Pacific estaba dispuesta a extenderle crédito al demandante. Ahora, ¿cuándo es que el crédito que le concedieron en septiembre es restringido? Pues varios meses después, ya que es el 26 de marzo de 1958 cuando le dirigen una carta donde le informan que "[l]a cuestión es, que aquí (Mr. Rex) se tiene que guiar por los informes y datos que tiene o llegan a su poder. Son gente estrictamente de números y para ellos no hay sentimentalismos de ninguna clase. Por el otro lado, si esos informes son equivocados, siempre están dispuestos a considerar cualquier rectificación presentada con pruebas" y continúa la carta "Nuestro Departamento es simplemente de ventas, pero el visto bueno es de ellos y en su caso no dieron su aprobación y tuvimos que cancelar su orden y lo que estuviera facturado. Sentimos lo ocurrido, pues n/deseos son de vender y dejar complacidos a los clientes y amigos. Quizás cuando Ud. dé otra vez un viaje a ésta, podrá visitar a Mr. Rex y aclarar su situación con él".

Esta prueba ciertamente no establece que la restricción del crédito con la Pacific casi un año después de abril de 1957, se debió al incidente de los cheques devueltos. En septiembre siguiente le concedieron crédito y no fue hasta después que la casa recibió un informe que lo restringieron, pero le hicieron claro que podía demostrar que el informe que tenían no se ajustaba a la realidad de su negocio.

En cuanto a la carta enviada por la Kay-Bee Export Co., Inc. le informa al demandante que "por motivos de haber recibido de fuente que nos merece crédito, de que varios de sus cheques fueron devueltos por el banco por falta de fondos suficientes, nuestro departamento de crédito ha rechazado el pedido hasta que Ud. nos envíe copia de su último estado de balance y también un reporte de su banco".

Esta carta no le informa que definitivamente le han retirado el crédito. Le requieren un estado financiero y un informe del banco. El demandante pudo haberle enviado su estado financiero y un informe del banco explicándole lo ocurrido. Así, pudo haberse aclarado lo sucedido.

Por último, consideremos la declaración de Juan Rivera. Tiene un negocio de papelería. Le vende a crédito al demandante, y le abrió una línea de crédito de seis a setecientos dólares. Era el librado de uno de los cheques devueltos por la cantidad de $100. Luego del incidente sólo le vendió de contado. Ésta es la única prueba que claramente establece que el crédito del demandante fue afectado por el incidente de los cheques. ■

Apreciada toda la prueba en conjunto, no podemos concluir que la causa del descalabro económico sufrido por el demandante fuera la actuación del demandado al no pagar los cheques. La prueba revela que sus deudas a fines del año 1958 llegaron a montar a $36,000.00 y entonces se acogió a un procedimiento de reorganización. Claramente otras fueron las causas que lo llevaron a esta situación. Desde antes de abril de 1957 la cuenta bancaria demuestra que con frecuencia se sobregiraba y el banco pagaba los cheques expedidos. Las casas con que negociaba le concedieron crédito después de abril de 1957, y aparentemente ya a principios de 1958 cuando se podía apreciar cuál era su verdadera situación económica fue que empezaron a restringirle el crédito.

Teniendo en cuenta todas estas circunstancias, entendemos que la indemnización concedida fue excesiva y que una

que se le conceda de $500.00 es más razonable. Será pagadera a ambos demandantes pues la causa de acción ejercitada es una de daños y perjuicios que pertenece a la sociedad de gananciales. Se eliminará la concesión de honorarios de abogado. *Así modificada, se confirmará.*