**FROST NATIONAL BANK OF SAN ANTONIO, Appellant,**

v.

**NICHOLAS & BARRERA, a professional corporation, Appellee.**

No. 15181.

Court of Civil Appeals of Texas, San Antonio.

Sept. 5, 1973.

Rehearing Denied Oct. 10, 1973.

Groce, Locke & Hebdon, San Antonio, for appellant.

Fred Clark, San Antonio, for appellee.

KLINGEMAN, Justice.

This is a suit filed by appellee, Nicholas & Barrera, a Professional Corporation, to recover a sum of money embezzled by a public accountant employed by it, through the use of a checking account at the Frost National Bank of San Antonio, appellant herein.

Appellee sought recovery both on a contractual basis and on a negligence basis, to-wit: (a) that appellant breached the depository contract between it and appellee in that appellant agreed by virtue of its depository contract to pay the amounts of checks drawn by appellee only to the

named payee of such checks, and that as a matter of law a bank must pay a check only to the payee named thereon or to his order; and (b) appellant was negligent in failing to ascertain the identity and existence of Depository Account No. 607, the designated payee on the checks in question, and in failing to obtain a proper endorsement on the checks in question. Appellant's pleading on which it went to trial consists of a general denial and a plea that any loss or damages which may have been sustained by appellee were caused by the negligence of appellee. Both parties filed motions for summary judgment. The trial court denied appellant's motion for summary judgment, granted appellee's motion, and decreed that appellee recover from appellant the sum of $22,288.93.[1]

Appellee is a professional corporation engaged in the practice of law. In about February, 1971, appellee employed a public accountant by the name of Patrick M. Penker. Mr. Penker was employed originally to computerize the accounts receivable, but soon assumed the general accounting responsibilities of the firm. It was a part of his duties to calculate the monthly payments of withholding taxes, which were to be paid to the Internal Revenue Service, and generally to handle the accounting work in regard thereto.

Prior to Penker's employment, the withholding taxes had been handled by Mrs. Mary Louise Magnon, a long-time employee of appellee. It was her practice, after computing the amounts which should be withheld, to prepare a check drawn on the firm's bank account at the Frost National Bank in that amount, making the check payable to the order of the Frost National Bank. She would then take this check, along with a Federal Tax Deposit Card furnished by the Internal Revenue Service, to a special window in the back part of the Frost Bank. The check and card would be delivered to the teller at the special window, who would stamp a validation on the detachable small part of the card and then return it to Mrs. Magnon as her receipt for the payment of the withholding taxes. The Frost Bank, as are all national banks, is a designated depositor for funds due the Internal Revenue Service, and the bank routinely receives from its customers deposits made for the payment of withholding taxes, and they are customarily handled just as Mrs. Magnon handled these before Penker's employment.

Penker changed this system. Shortly after his employment by appellee, he went to the Frost National Bank and opened a personal checking account under the style of "Depository Account." The signature card on this account indicates that it was opened on March 30, 1971, with an initial deposit of $10. It bears the account number of 038–342, and the only person authorized to draw checks on such account was Patrick M. Penker. Penker thereafter wrote and delivered to Mrs. Magnon a letter setting forth the procedure she was to follow thereafter in making payment of withholding taxes. Attached to the letter was a prototype of the monthly checks which she was to use as a form in preparing the monthly checks for withholding taxes. These checks were to be made payable to the order of "Depository Account No. 607." He also delivered to her the preprinted deposit slips for his depository account which he had opened at the Frost National Bank, which showed the account number of 038–342, but nowhere is shown thereon the number 607. Mrs. Magnon was instructed that instead of making the checks payable to the Frost National Bank as Mrs. Magnon had done in the past, she was to make them payable to Depository Account No. 607. After having the checks signed by Mr. Nicholas or Mr. Barrera, she was to take them to a regular teller at the bank, rather than to the special teller at the back part of the bank, and was to deposit them to the depository account, us-

1. This is the aggregate sum of six checks which were identified as Exhibits Nos. 2, 3, 4, 5, 6 and 7.

ing the preprinted deposit slips. At Penker's request, Mrs. Magnon gave him all of the federal tax deposit cards which had been furnished by the Internal Revenue Service, Penker having told her that he would take care of them. In actuality, these cards were never sent to the Internal Revenue Service, and Penker actually destroyed them.

The checks involved are identified and referred to as Exhibits Nos. 1 through 7. Two of the checks, being Exhibits Nos. 1 and 2, were handled differently than the other checks and will be discussed in more detail hereinafter. The balance of the checks, Exhibits Nos. 3 through 7, were all deposited to the depository account, and thereafter Penker withdrew these funds, thereby misappropriating them to his own use. The fraud was discovered in early September, 1971, and no further checks were deposited after the check of July 30, 1971.

The first and second checks were both dated March 8, 1971. This was prior to the time that Penker opened his depository account. The first check, which was in the amount of $1,673.01, was actually taken by Penker to the proper place for making withholding deposits, and these funds eventually got to the Internal Revenue Service. This check is not one of the checks in controversy. The other check (Exhibit No. 2) is in the amount of $2,141.20, and is made payable to Depository Account No. 607, and also contains thereon the notation, "F. I.D. 74–1668276" and "NICH 31(74)." This check was deposited by Penker in his company's account in the Frost National Bank, which account was styled Penker and Company, and which bears an account number of 042–390, and the proceeds of this check were also misappropriated by Penker. This check is the only check in controversy here that is endorsed, it being endorsed for deposit to Penker & Company. All the other checks here involved, being Exhibits Nos. 3, 4, 5, 6 and 7, contain no endorsements.

In actuality, Penker made a mistake in using the number 607, as the number appearing on the preprinted federal tax deposit cards of Nicholas & Barrera is 606. Penker subsequently discovered this error, but he thought it best not to rock the boat and made no change.

Penker testified in some detail as to the scheme he used in the embezzlement here involved, and freely admitted that it was his intention and design to defraud appellee and use such monies for his own use and benefit.

By its first point of error, appellant urges that the trial court erred in failing to sustain appellant's motion for summary judgment as to the checks identified as Exhibits Nos. 3 through 7, because under the undisputed facts appellant was entitled to a judgment as a matter of law. By its second point, appellant asserts that the court erred in failing to sustain its motion for summary judgment as to the check identified as Exhibit No. 2, because it was a bearer instrument, and was, as a matter of law, properly charged to appellee's account. By its third and fourth points of error, appellant urges that the trial court erred in failing to sustain its motion for summary judgment because: (a) under the undisputed evidence the loss suffered by appellee was the proximate result of its own negligence; and (b) under the undisputed facts, the loss must, as a matter of law, fall on appellee. By its last point of error, appellant asserts that the trial court erred in sustaining appellee's motion for summary judgment because the evidence raises issues of fact as to the negligence of appellee, which issues of fact should have been submitted to the jury.

We first consider appellant's contention that the checks are bearer instruments, rather than order instruments, and as such, were negotiable by delivery, no endorsement was necessary, and that the checks were properly charged to appellee. Appellant relies on this contention primarily with regard to the check dated March 8,

1971, identified as Exhibit No. 2, as evidenced by its second point of error.

The Business and Commerce Code, Article 3.111, Tex.Rev.Civ.Stat.Ann., V.T.C.A., provides that "[a]n instrument is payable to bearer when by its terms it is payable to (1) bearer or the order of bearer; or (2) a specified person or bearer; or (3) 'cash' or the order of 'cash', or any other indication which does not purport to designate a specific payee." The check identified as Exhibit No. 2 would not appear to fall under any of these categories.

Such code, Article 3.110, Business and Commerce Code, Tex.Rev.Civ.Stat.Ann., further provides that an instrument is payable to order when by its terms it is payable to the order or assigns of any person therein specified with reasonable certainty, or to him or his order, or when it is conspicuously designated on its face as "exchange" or the like and names a payee.[2] It may be payable to the order of an estate, trust or fund, in which case it is payable to the order of the representative of such estate, trust or fund, or to his successors. In Blackmon v. Hale, 78 Cal.Rptr. 569 (District Court of Appeals, Second District-1969), the contention was made that a check payable to Adams & Hale Trust Account was a bearer instrument and needed no endorsement, since it was payable to an account and not to an individual. The appellate court disagreed, stating: "We do not agree with this view, for we look on the check as an order instrument payable to the order of those persons authorized to deposit and withdraw from the particular account involved."

Under the code, a "person" includes an individual or organization; and the term "organization" includes a corporation, governmental subdivision or organization, two or more persons having a joint or common interest, or any other legal or commercial entity. In Anderson on Uniform Commercial Code, Volume 1, Second Edition (1970), it is stated that an organization is the definition of every type of entity or association, excluding an individual acting as such, and that "[t]he code avoids the question of whether an enterprise is a legal person by employing the term 'organization' and defining it so broadly as to include any legal or commercial person. The only form of enterprise not embraced within the definition of organization is the single proprietor or individual conducting a business as such." Anderson on Uniform Commercial Code, Section 1–201:89, Organization.

It is to be remembered that the check identified as Exhibit No. 2 was deposited prior to the time that the "Depository Account" was opened by Penker, and at such time there was no such account in the bank, nor was there any account designated as Depository Account No. 607. In truth, the check was payable to a nonexistent or fictitious payee. Under the old negotiable instrument law, prior to the adoption of the Commercial Code, an instrument payable to a fictitious payee was classified as a bearer instrument, but the Uniform Commercial Code omits the category of fictitious payees from the classification of instruments which are payable to bearer. See Anderson on Uniform Commercial Code, Section 3.111:6, Fictitious Payee; 11 Amer.Jur.2d, Bills and Notes, Section 106.

■ While we have found no cases directly in point on the precise question here involved, we have reached the conclusion

---

2. "Under the Commercial Code, 'bearer' means the person in possession of an instrument payable to the bearer or indorsed in blank; and an instrument is payable to bearer when by its terms it is payable to: (a) bearer or the order of bearer; or (b) a specified person or bearer; or (c) 'cash' or the order of 'cash,' or any other indication which does not purport to designate a specific payee." 11 Amer. Jur.2d, Bills and Notes, Section 106, Bearer Paper. "Under the Commercial Code, an instrument is payable to order when by its terms it is payable to the order or assigns of any person therein specified with reasonable certainty, or to him or his order, or when it is conspicuously designated on its face as 'exchange' or the like and names a payee." 11 Amer.Jur.2d, Bills and Notes, Section 107, Order Paper.

that all of the checks in issue are "order" instruments, rather than "bearer" instruments.

We have concluded that the motion for summary judgment was properly granted as to the check identified as Exhibit No. 2. It is to be remembered that the facts and circumstances with regard to this check are different from the rest of the checks. This check was actually handled and deposited by Patrick M. Penker, differing in this respect from the other checks where the deposits were made by an employee of appellee. The deposit of this check was made prior to the time that the "Depository Account" was opened by Penker. This check was definitely not deposited to the payee named on such check, but was deposited to the general checking account of Penker & Company. The endorsement on this check bears no similarity to the named payee.

It is a general rule, with some exceptions hereinafter noted, that a drawee bank may not charge the account of the drawer with the amount of a check lacking the payee's endorsement, unless it can show payment to the proper person. It is the duty of the bank to make payment only to the payees named on its depositors' checks, or to their order. So, as a general rule, the bank is bound at its peril to determine the identity of the payee, and only where by express representation or by negligence the drawer enables a wrongdoer to impose upon the drawee bank does the bank acquire rights against the drawer through an unauthorized payment. 10 Amer.Jur.2d, Banks, Sections 539, 555. Since full title to an order check and the rights to its proceeds ordinarily are transferable only by delivery of the check with the endorsement of the payee thereon, the payment of such

a check to one other than the payee, without a valid endorsement of the payee, is at the risk of the bank and does not discharge the bank from liability to the drawer for its deposit. American National Bank v. First National Bank, 130 Colo. 557, 277 P. 2d 951 (1954).[3]

Under the record the trial court did not err in granting summary judgment for the amount of money represented by the check identified as Exhibit No. 2.

However, with regard to the other checks (Exhibits Nos. 3, 4, 5, 6 and 7), we have concluded that there were disputed issues of fact as to the negligence of both appellant and appellee.

As a general rule it is the duty of a bank to make payment only to the payee named in its depositor's check, or to their order, and ordinarily the bank is bound at its peril to determine the identity of the payee. However, there is a recognized exception to this general rule where the bank is misled by some negligence or other fault of the drawer. 10 Amer.Jur.2d, Banks, Sections 539, 622; Union Trust Company v. Soble, 192 Md. 427, 64 A.2d 744 (1949); Wright v. Bank of America, 176 Cal.App. 2d 176, 1 Cal.Rptr. 202, 76 A.L.R.2d 1293 (District Court of Appeals, Second District–1959).

As hereinbefore noted, the facts and circumstances as to the checks identified as Exhibits Nos. 3, 4, 5, 6 and 7 differ from those in regard to the check identified as Exhibit No. 2. The record discloses that these checks were deposited to an account styled "Depository Account," which was an account opened by Patrick M. Penker, and which had an account number of 038–342, and which was a personal account of Patrick M. Penker. Each

3. "The drawee bank is authorized to pay out funds belonging to its depositor when, and only when, the check is endorsed by the payees therein, or by persons who have satisfied it or the bank to which the check is presented for payment of their right to the proceeds. We believe it to be the duty of the bank upon which a check is drawn to satisfy itself that it is correctly endorsed." 277 P.2d at 954. "The holder of the check, after this failure to endorse, acquires the interest of an assignee only, and as such his interest in the proceeds of the check are to be determined." 277 P.2d at 956.

of these checks were made payable to the order of "Depository Account No. 607." Each of these checks were brought to the bank by Mrs. Mary Louise Magnon, an employee of appellee, who was known to the teller to be an employee of appellee, and who had frequently made deposits on behalf of appellee. Mrs. Magnon presented these checks, together with a preprinted deposit slip for deposit to "Depository Account," and these checks were actually deposited to such depository account. There is also testimony that while Mrs. Magnon believed that the checks were being deposited to an account for the purpose of paying withholding taxes to the Internal Revenue Service, that prior to Penker's employment, she had handled and was thoroughly familiar with the customary procedure for making deposits in a bank for payment of withholding taxes; and that the procedure used by Penker, which she followed at his direction, was different from the usual and customary method of handling such checks. There is testimony that appellee employed Penker without any particular investigation of his credentials or background and employed him on the recommendation of one of its employees, who had previously known him. Mrs. Magnon testified that appellee instructed her to do what Penker said. We are of the opinion that the record raises issues of fact as to the negligence of appellee.

We are also of the opinion that the record raises issues of fact as to the negligence of appellant. The checks were actually made payable to Depository Account No. 607, but were deposited to a depository account with the account number 038–342. It is undisputed that none of these checks identified as Exhibits Nos. 3, 4, 5, 6 and 7 were endorsed. A long-time employee of appellant, who has been a teller for many years, and who, according to the testimony of Mrs. Magnon, was the teller to whom these deposits were made, testified that they had been instructed that endorsements were not necessary when checks were made payable to cash or to the Frost National Bank, but that in all other cases they must be endorsed. Such employee further testified that it would have been an easy matter to ascertain if there was a depository account No. 607, and would have taken only a few minutes. She also testified that if a check came in with the payee "Depository Account No. 607," they would usually require an endorsement by "Depository Account No. 607." Another employee of appellant testified that in their training, they are told that it is necessary to obtain an endorsement on a negotiable instrument before either paying it or depositing it. Another employee testified that ordinarily they would never deposit a check made out to one payee, but with a deposit slip with a different number, unless they had an endorsement from the payee of the check.

It is our opinion that the record raises disputed issues of fact as to the negligence of both appellant and appellee as to the checks identified as Exhibits Nos. 3, 4, 5, 6 and 7, and that the trial court should not have granted either appellant's or appellee's motions for summary judgment as to these checks.

The judgment of the trial court is affirmed as to the check identified as Exhibit No. 2, dated March 8, 1971, which check is in the amount of $2,141.20. The judgment of the trial court is reversed and remanded for a new trial as to the checks identified as Exhibits Nos. 3, 4, 5, 6 and 7, which checks aggregate the sum of $20,147.73. Costs of court are assessed one fourth against appellant, and three fourths against appellee.